**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KIRK OLDHAM,

      Defendant - Appellant.

No. 05-1406

(D. Colorado)

(D.C. No. 05-CR-24-D)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Kirk Oldham pled guilty to one count of interstate transport of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), and one count of criminal forfeiture, in violation of 18 U.S.C. § 2253(a)(1). He was sentenced to 135 months' imprisonment, followed by three years of supervised release. He appeals his sentence, arguing that the district court erroneously applied an enhancement under United States Sentencing Commission, <u>Guidelines Manual</u> ("USSG"), §2G2.2(b)(2)(B) (Nov. 2003), and that the sentence is unreasonable. For the reasons set forth below, we affirm.

## BACKGROUND

Oldham stipulated to the following facts in his plea agreement, which he does not challenge on appeal. Oldham came to the attention of the FBI in February 2004, when an FBI agent entered a Yahoo! Group internet forum called "running and giggling." This forum was accessible by invitation only, and the agent had infiltrated the forum using an undercover screen name. On the forum website, the agent found a photo album that, it was later learned, had been posted by Oldham. After downloading the album, the agent discovered that it contained seventeen images of child pornography.

Two days later, another FBI agent found a photo album that Oldham had posted on a different Yahoo! Group website, which contained thirty-eight images

of child pornography. This Group website, called "the truth about familiarity," was also owned and moderated by Oldham. The owner/moderator of such a website is the person that initiates the group, sets forth its parameters, and acts as gatekeeper in regard to who can join and participate in the group.

The FBI executed a federal search warrant in May 2004 at Oldham's Colorado residence. Oldham was present at the time of the search and admitted to the agents that he downloaded child pornography and was moderator of at least two Yahoo! Groups. He indicated that "[a]s a rule anyone that wanted to join his groups had to post images or movies that contained child pornography." Plea Agreement at 4, R. Vol. I, tab 18. In the written statement Oldham gave to the FBI, he admitted that he had "'uploaded some of the pictures [he's] collected, mostly to stimulate other members of the yahoo group [he] moderate[s] into posting pictures of their own.'" Id. Forensic analysis of the computers found by the FBI during the search revealed approximately 2000 images of child pornography.

A grand jury indicted Oldham on four counts related to the distribution of child pornography. As indicated above, Oldham pled guilty to two of these counts. His plea agreement with respect to the first count stated that, in exchange for his plea, the government would move to dismiss the other two counts and

would recommend a three-level reduction in Oldham's offense level under the advisory sentencing guidelines, USSG §3E1.1, for acceptance of responsibility.

The plea agreement also indicated that Oldham and the government disagreed in regard to the applicability of USSG §2G2.2(b)(2)(B), which imposes a five-level sentencing enhancement if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." According to Oldham, USSG §2G2.2(b)(2)(E) should apply instead, imposing a two-level enhancement if the offense involved "[d]istribution other than distribution described in subdivisions (A) through (D)."

The district court accepted Oldham's guilty pleas. The United States Probation Office then issued a Presentence Investigation Report ("PSIR") that contained a computation of the Probation Office's recommended imprisonment range based on the sentencing guidelines. The PSIR computed a total offense level for Oldham of 32. This included a three-level reduction for acceptance of responsibility and a five-level enhancement under USSG §2G2.2(b)(2)(B). The PSIR recognized that the parties disputed the latter adjustment but applied the adjustment based on Application Note 1 in the Commentary to the guideline provision. Together with a criminal history category of II, this yielded a guideline sentencing range of 135 to 168 months' imprisonment.

-4-

Oldham filed an objection to the §2G2.2(b)(2)(B) enhancement in the PSIR. He argued that while potential invitees to his Yahoo! Group sites would generally send him child pornography by email, he did not send them child pornography in return but instead sent them Yahoo! Group information. According to Oldham, once the invitees joined his Groups, they had access to the child pornography he had posted on the Group websites, but at that point they were not required to post additional child pornography of their own. Oldham thus concluded that his posting of child pornography on his websites was not in exchange for child pornography of other Group members. In addition to his objection to the §2G2.2(b)(2)(B) enhancement, Oldham argued that a reasonable sentence under the circumstances of his case would be 97 months.

In its response to Oldham's argument regarding §2G2.2(b)(2)(B), the government attached an email Oldham had sent to the members of his Yahoo! Group, in which he stated:

> I'll set up the files, photos, and links folders, and post a few naughty pics and things to get things started. Let's have some fun! Post short stories or testamonials [sic] on the message board, or post longer stories or testamonials [sic] in the files section. Movies in the files section.

R. Vol. IV ex. 2. According to the government, this email indicates that Oldham's posting of images on his site was intended to "get things started," in order to stimulate other members to post similar images. Tr. of Sentencing Hr'g

at 5, R. Vol. III.  Moreover, the government contended that Oldham "did expect to receive child pornography" in exchange for the images he posted, based not only on Oldham's intent but on the common practice of and reliance on trading among those involved "in [the] world of child pornography."     Id. at 5-6.  The government also pointed to the presence of over 2000 child pornographic images on Oldham's computer as evidence that he was "involved in a trading atmosphere."   Id. at 6.

Following argument on the issue at the sentencing hearing, the district court concluded that Oldham's written statement together with his email communication to members of his Group "indicate that . . . [Oldham] through his own words was soliciting individuals through the establishment of this web site to post pictures of their own," and that "he has an expectation that by posting his pictures, then others will be stimulated to post their pictures, which will then come back to him."   Id. at 7-8.  Based on this finding, the district court overruled Oldham's objection to the §2G2.2(b)(2)(B) enhancement.  The court then considered the sentencing factors set forth in 18 U.S.C. § 3553(a).  Based on those factors, the court concluded that a sentence within the advisory Guideline range was reasonable and imposed a sentence of 135 months.  Oldham appeals his sentence, renewing the arguments he raised in his objections to the PSIR and at the sentencing hearing.

**DISCUSSION**

**I.     USSG §2G2.2(b)(2)(B) enhancement**

Where, as here, a defendant was sentenced after the Supreme Court, in

United States v. Booker , 543 U.S. 220 (2005), rendered the federal sentencing

guidelines advisory rather than mandatory, we review the sentence for

reasonableness, "guided by the factors set forth in 18 U.S.C. § 3553(a)."          United

States v. Kristl , 437 F.3d 1050, 1053 (10th Cir. 2006) (per curiam).  At the same

time, the advisory Guidelines "are also a factor to be considered in imposing a

sentence, which means that district courts 'must consult those Guidelines and take

them into account when sentencing.'"       Id. (quoting  Booker , 543 U.S. at 264).

Accordingly, we continue to review the district court's application of the

Guidelines de novo, and we review any factual findings for clear error.          Id. at

1054.

Here, as indicated, Oldham contests the district court's application of a

five-level enhancement pursuant to USSG §2G2.2(b)(2)(B) in the calculation of

the appropriate guideline range of imprisonment.  As quoted above, this

enhancement applies to the offense of child pornography distribution if the

defendant's actions involved "[d]istribution for the receipt, or expectation of

receipt, of a thing of value, but not for pecuniary gain."  USSG §2G2.2(b)(2)(B).

The Application Note to this guideline provision indicates that it applies to

any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. . . . [I]n a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

USSG §2G2.2, comment. (n.1).

Referring to this Application Note, Oldham argues that there was no "transaction" involved here because his posting of child pornographic images on his Yahoo! Group website was not a direct exchange for such images from others. Essentially, Oldham contends that, in order for §2G2.2(b)(2)(B) to apply, a defendant must have entered into an agreement with someone else to exchange child pornography—in other words, that the defendant must have an expectation of a direct quid pro quo. He asserts that, while he may have hoped that his postings might stimulate others to post similar images, he had no "certain expectation" that that would occur. Appellant's Br. at 12.

The question is therefore what degree of certainty is required in order for a defendant to have an "expectation," within the meaning of USSG §2G2.2(b)(2)(B), that he will receive a thing of value in exchange for his distribution of child pornography. The 2003 version of USSG §2G2.2(b)(2)(B), which is applicable here, is a result of a 2000 amendment to §2G2.2(b)(2). [1] The

_____

[1]The former version of USSG §2G2.2(b)(2) imposed up to a five-level
(continued...)

previous version did not contain the "expectation" language, and our court has not yet interpreted the amended provision. However, in United States v. Maneri, 353 F.3d 165 (2d Cir. 2003), the Second Circuit considered an argument similar to that offered by Oldham and held that §2G2.2(b)(2)(B) "may apply notwithstanding the absence of a *quid pro quo* agreement between the distributor and the recipient of child pornography." Id. at 170. Rather, "the provision is implicated if the distributor expects—rather than just hopes—to receive a thing of value." Id. at 168. In other words, the enhancement applies "when a defendant distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value." Id. at 169.

We agree that a defendant may be considered to have an "expectation" that he will receive child pornography in exchange for his distribution of child pornography, even in the absence of a specific agreement with another person, if he anticipates or reasonably believes that the recipients of his distribution will reciprocate. In this case, as described above, the district court found that Oldham did have an expectation in this sense, citing Oldham's creation of a Yahoo! Group

---

[1](...continued)
enhancement if the offense "involved distribution." USSG §2G2.2(b)(2) (Nov. 1998). The Application Notes indicated that "distribution" "includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." USSG §2G2.2, comment. (n.1); see United States v. Pearl, 324 F.3d 1210, 1216 (10th Cir. 2003).

and his solicitation of Group members as evidence. Having carefully reviewed the record, we conclude that this finding is not clearly erroneous. We therefore affirm the district court's imposition of the five-level enhancement pursuant to §2G2.2(b)(2)(B).

## II.    Reasonableness of the sentence under the § 3553(a) factors

Oldham also argues that the district court's sentence is unreasonable. "[A] sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." Kristl, 437 F.3d at 1054. "This is a deferential standard" that the defendant may rebut "by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." Id.

Oldham concedes that his argument challenging his sentence's reasonableness "repeats, obviously, the first argument above that the district court should have found the advisory guideline range [based on an offense] level 29 rather tha[n] level 32," which would have yielded a range of 97 to 121 months. [2] Appellant's Br. at 14. Oldham also maintains that "consideration of the other sentencing factors under 18 U.S.C. § 3553(a), especially defendant's family background and relationships, his dire need for treatment as expressed at

---

[2]Oldham's calculation subtracts the five-level enhancement under USSG §2G2.2(b)(2)(B) but adds a two-level enhancement under USSG §2G2.2(b)(2)(E), reducing the final offense level by three levels.

sentencing . . ., and his generally good character" should have led the district court to conclude that 97 months' imprisonment was a reasonable sentence. Id. Oldham fails, however, to make any argument that attempts to demonstrate why the § 3553(a) factors should lead us to conclude that the sentence he did receive is unreasonable. Even if we accept Oldham's argument that a 97-month sentence would be reasonable, that does not necessarily mean that the sentence actually imposed by the district court must be overturned. See United States v. Mares, 441 F.3d 1152, 1161 (10th Cir. 2006) ("While the district court may have been able to justify a nonguideline sentence on the basis of [the defendant]'s personal history and characteristics, . . . it was not obligated to do so.").

The record indicates that the district court "specifically reviewed and rejected" Oldham's request for a 97-month sentence "in light of the relevant factors contained in § 3553(a) and the circumstances of the case." United States v. Galarza-Payan, 441 F.3d 885, 890 (10th Cir. 2006). We are likewise satisfied that the sentence imposed by the district court, at the low end of the applicable advisory guideline range, was reasonable. We therefore affirm the sentence imposed by the district court.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge