**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT GEINER,

Defendant - Appellant.

No. 06-8055

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D. Ct. No. 05-CR-63-WFD)**

Loretta R. Green, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Cheyenne, Wyoming, appearing for Defendant-Appellant.

Stuart S. Healy, III, Assistant United States Attorney (Matthew H. Mead, United States Attorney, with him on the brief), Office of the United States Attorney, Cheyenne, Wyoming, appearing for Plaintiff-Appellee.

Before **TACHA**, Chief Circuit Judge, **MURPHY**, Circuit Judge, and **LUNGSTRUM**,[*] District Judge.

**TACHA**, Chief Circuit Judge.

---

[*]The Honorable John W. Lungstrum, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

Defendant-Appellant Robert Geiner appeals his sentence of 210 months' imprisonment for attempted interstate transportation of child pornography and possession of child pornography. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) and affirm.

## I. BACKGROUND

Mr. Geiner was charged with attempted interstate transportation of child pornography (count one), in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1), and possession of child pornography (count two), in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). He pleaded guilty to both counts, but did so without entering into a plea agreement. Because the proposed plea agreement required that Mr. Geiner stipulate to the application of certain enhancements under the United States Sentencing Guidelines (U.S.S.G. or Guidelines), Mr. Geiner rejected the agreement, electing to raise his arguments regarding the proper application of the Guidelines before the District Court. At his change of plea hearing, Mr. Geiner admitted that he knowingly possessed and attempted to distribute computer files containing child pornography by enabling the file-sharing feature on a computer software program called "bearshare," which he installed on his home computer. He also admitted that he obtained computer files containing child pornography by downloading them from other people using bearshare.

The U.S. Probation Office issued a Presentence Investigation Report (PSR) calculating an imprisonment range under the Guidelines of 210 to 262 months for count one and 210 to 240 months for count 2 based on a total offense level of 37 and a Criminal History Category of I. The total offense level included a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for committing an offense involving "distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." As the PSR addendum reflects, Mr. Geiner objected to the application of this enhancement, arguing that it should not apply because he did not barter or agree with another for the exchange of a "thing of value" when he shared and downloaded files containing child pornography.

Mr. Geiner noted this same objection to the PSR at his sentencing hearing, arguing that, instead of applying the five-level enhancement, the court should apply the general two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution that does not fall under one of the other § 2G2.2(b)(3) subsections. In response, the Government introduced the testimony of the special agent who investigated and interviewed Mr. Geiner.[1] The agent testified that Mr. Geiner had been using a software program called bearshare, a peer-to-peer file-sharing program that is available on the Gnutella File-Sharing Network. The agent explained that Mr. Geiner originally used this program to download images from

---

[1]Mr. Geiner stipulated to the agent's expertise in the area of Internet crime investigation, specifically investigations involving child exploitation.

others without enabling the sharing feature of the software program to allow others to access and download his computer files. Later, however, Mr. Geiner changed the software settings by clicking a box on the software's preferences page to facilitate the sharing of certain computer files with others.[2] According to the agent, Mr. Geiner had learned that he could download files from others at a faster speed if he permitted others to obtain files from him. As the agent explained, because Mr. Geiner permitted the sharing of his files, he became a "priority trader" when he sought files from other network users. As a priority trader, Mr. Geiner had the benefit of a faster downloading speed, which gave him the ability to obtain files containing child pornography more easily and efficiently. After hearing from both parties, the District Court decided that the enhancement applied to Mr. Geiner's case because he had made files containing child pornography available to the public in return for the ability to obtain child pornography at a faster speed.

After the court addressed Mr. Geiner's objections to the PSR, Mr. Geiner indicated that he wished to call witnesses to testify in his behalf. At this point, the District Court notified the parties that it intended to impose a sentence within the Guidelines, even though the court understood that the Guidelines are not mandatory and it may exercise its discretion to impose a sentence that meets the

---

[2]The software makes available in a separate folder only those files that the user has designated for sharing.

-4-

objectives of the sentencing factors delineated in 18 U.S.C. § 3553(a). The court noted that the Guidelines have "particular value to sentencing judges in this kind of case" and that it should not ignore the Guidelines when a Guidelines sentence meets the purposes of the factors in § 3553(a). In addition, the court explained that, because it intended to apply a Guidelines sentence, it would not consider "impermissible bases for departure." In response, Mr. Geiner's counsel indicated that she understood the court's intentions and that all of the testimony she planned to present was related to a ground for departure under the Guidelines, specifically diminished capacity under U.S.S.G. § 5K2.13.

After hearing Mr. Geiner's testimony and counsels' arguments concerning a departure based on diminished capacity, the court accepted the PSR's total offense level of 37 and decided to sentence Mr. Geiner within the Guidelines range contained in the PSR. Before imposing the sentence, the court asked the parties if they wished to make any additional objections. Neither party objected. The court subsequently sentenced Mr. Geiner to 210 months' imprisonment, the bottom end of the applicable range under the Guidelines.

On appeal, Mr. Geiner challenges his sentence on two grounds. He argues that the District Court erred in applying the enhancement under U.S.S.G. § 2G2.2(b)(3)(B) and that his sentence is both unreasonable and unconstitutional because the court did not consider the § 3553(a) factors.

## II. DISCUSSION

We will set aside Mr. Geiner's sentence only if it is procedurally or substantively unreasonable in light of the statutory factors contained in 18 U.S.C. § 3553(a). *See United States v. Hildreth*, 485 F.3d 1120, 1127 (10th Cir. 2007). A procedurally reasonable sentence reflects the sentencing court's calculation of the applicable advisory Guidelines range and its application of the § 3553(a) factors. *See United States v. Atencio*, 476 F.3d 1099, 1102 (10th Cir. 2007). In addition, to impose a procedurally reasonable sentence, the sentencing court must "afford defendants their rights under the Federal Rules of Criminal Procedure." *Id.* A sentence is substantively reasonable when it "reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *Id.*

Moreover, although the Guidelines are now advisory, we accord a properly calculated Guidelines sentence a presumption of substantive reasonableness, *see United States v. Kristl*, 437 F.3d 1050, 1054–55 (10th Cir. 2006) (per curiam), an approach the Supreme Court recently upheld as constitutional, *Rita v. United States*, 127 S. Ct. 2456 (2007). In holding that the courts of appeals may accord Guidelines sentences this presumption, the Supreme Court explained that the Guidelines "seek to embody the § 3553(a) considerations" and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 2464. Consequently, when a district court imposes a Guidelines sentence, it reflects the "double determination" of the district court and the Sentencing Commission regarding the proper sentence: "The upshot is that the sentencing

-6-

statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." *Id.* at 2463. As the Court reasoned, an appellate presumption of reasonableness "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable."[3] *Id.* at 2465.

In affirming the use of an appellate presumption, the Court also emphasized the nonbinding nature of the presumption. *Id.* at 2463. It does not function like an evidentiary presumption, which requires one side to meet a particular burden of proof, and it does not allow for the especially strong deference appellate courts often grant an expert agency's factual findings. *Id.* The presumption simply reflects the increased likelihood that a Guidelines sentence will be reasonable because it represents the combined judgment of the sentencing court and the Sentencing Commission. *Id.* at 2465. With this in mind, we first determine whether the District Court correctly applied the Guidelines, reviewing the court's findings of fact for clear error and its legal conclusions de novo. *See Kristl*, 437 F.3d at 1054. We then address Mr. Geiner's argument that his sentence is

---

[3]In *Rita*, the Supreme Court cautioned that this presumption operates only on appeal. A sentencing court may not presume that a Guidelines sentence applies in any given case, but must comply with the "thorough adversarial testing contemplated by federal sentencing procedure." 127 S. Ct. at 2465.

unreasonable and unconstitutional.

A.    Application of the Guidelines

The District Court applied a five-level increase to Mr. Geiner's sentence under U.S.S.G. § 2G2.2(b)(3)(B), which enhances a sentence based on "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."  The application note to this section defines the type of distribution to which the enhancement applies as "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit."  U.S.S.G. § 2G2.2 app. n.1.  The definition of "thing of value" is clarified by the note as "anything of valuable consideration" and is illustrated by an example: "For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received."  *Id.*

Mr. Geiner argues that this enhancement should not apply because he did not agree to provide access to his files in exchange for the files he sought from others.  Nor did he expect anyone to reciprocate by providing files or anything else of value.  In other words, because he did not communicate with anyone who had access to his files and did not expect anyone to provide him with something of value in return for his files, Mr. Geiner contends that the District Court erred in applying the five-level enhancement.  Because this Court has yet to interpret

this particular Guidelines provision, we analyze the relevant language in detail, focusing in particular on the meaning of "transaction," "expectation," and "thing of value."

1. The Meaning of "Transaction"

We begin by addressing the argument that the enhancement applies only to a bargained-for exchange or agreement between two or more traders in child pornography. Although the application note contains terms familiar to contract law, the plain language of the provision itself counsels against a narrow interpretation of its application. A person need only have the "expectation of receipt" of something of value for the enhancement to apply. This expectation need not arise from an underlying agreement to exchange child pornography or distribute it in return for a thing of value. Although the application note indicates that "bartering" and "other in-kind transaction[s]" are examples of transactions to which the enhancement applies, it does not limit the definition of transaction to these examples. We therefore agree with the Second Circuit's interpretation of the note's language: "The word 'including' before the examples indicates that any transaction—so long as it involves the 'expectation' of the 'receipt' of a 'thing of value'—suffices to trigger the subsection's enhancement." *United States v. Maneri*, 353 F.3d 165, 170 (2d Cir. 2003); *see also United States v. Oldham*, 177 Fed. App'x 842, 846–47 (10th Cir. 2006) (unpublished) (agreeing with the Second Circuit's holding that a defendant may have an expectation in the "absence of a

specific agreement with another person"). Hence, Mr. Geiner need not have entered into a specific agreement or understanding with other individuals for the enhancement to apply. The enhancement applies if he engaged in *any* transaction with the expectation that he would receive a thing of value.

Our recent discussion of "distribution" under 18 U.S.C. § 2252A in *United States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007), illustrates how Mr. Geiner's conduct constitutes a "transaction." In *Shaffer*, we interpreted the term "distribution" under § 2252A(a)(2)[4] according to its plain meaning, holding that a defendant distributes child pornography under the statute by "distributing, delivering, transferring, or dispersing" it to others. *Id*. at 1223–24 (internal quotation marks omitted). We specifically held that a defendant distributes child pornography by making computer files containing child pornography available for others to download. *Id*. at 1223. We likened a defendant who makes computer files available in this manner to the owner of a self-serve gas station:

> [N]either the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve . . . we do not doubt for a moment that the gas station owner is in the business of "distributing[]" . . . gasoline.

---

[4]Under 18 U.S.C. § 2252A(a)(2), a person is subject to criminal liability if he or she "knowingly receives or distributes . . . any child pornography [or any material that contains child pornography] that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer."

*Id.* at 1223–24. We also do not doubt that the gas station owner and the passerby engage in a "transaction," which includes both an "act or an instance of conducting business or other dealings . . . [and] [a]ny activity involving two or more persons." Black's Law Dictionary (8th ed. 2004). Hence, the meaning of "distribution" under § 2252A easily falls within the meaning of the word "transaction."[5] Here, Mr. Geiner does not dispute that he attempted to distribute child pornography within the meaning of § 2252A. In addition, he does not contest the District Court's finding that a governmental agent was able to download files containing child pornography from his computer. Because his conduct satisfies our definition of distribution in *Shaffer*, 472 F.3d at 1224, it also constitutes a "transaction" as that term is used in the application note to U.S.S.G. § 2G2.2. *See Shaffer*, 472 F.3d at 1224 (holding that defendant "distributed" child pornography under § 2252A when others downloaded it after he made it available through his use of a file-sharing program). Consequently, the only

---

[5]The application note to U.S.S.G. § 2G2.2 defines "distribution" more broadly than our interpretation of the term under § 2252A: "'Distribution' means any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." U.S.S.G. § 2G2.2 app. n.1. We need not decide when conduct that meets this broader definition of "distribution" will constitute a "transaction" in the ordinary sense discussed above. Today, we only observe that conduct meeting the definition of distribution in *Shaffer*, *see* 472 F.3d at 1223–24, is also a "transaction" as that term is used in the application note to U.S.S.G. § 2G2.2.

remaining question is whether Mr. Geiner expected to receive a thing of value.

2. The "Expectation of Receipt" of a "Thing of Value" Under U.S.S.G. § 2G2.2(b)(3)(B)

The term "expectation" in U.S.S.G. § 2G2.2(b)(3)(B) is a result of a 2000 amendment to the Guidelines.[6] As we recently noted, although this Court has yet to interpret the amended language, the Second Circuit has interpreted the provision at issue. *See Oldham*, 177 Fed. App'x at 846 (unpublished) (citing *Maneri*, 353 F.3d 165). In *Maneri*, the Second Circuit explained when a defendant expects to receive a thing of value under U.S.S.G. § 2G2.2(b)(3)(B): "[B]ased on the ordinary meaning of the word 'expectation,' . . . [the] five-level enhancement applies when a defendant distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value." 353 F.3d at 169. We agree that this interpretation reflects the ordinary meaning of the word "expectation" and hold that a defendant expects to receive a thing of value under U.S.S.G. § 2G2.2(b)(3)(B) when he distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value.

In the instant case, Mr. Geiner clearly anticipated that he would receive a thing of value when he enabled the software's file-sharing feature in order to

---

[6]The amended provision was originally codified at § 2G2.2(b)(2)(B). *See* U.S. Sentencing Guidelines Manual § 2G2.2(b)(2)(B) (2000). In November 2004, the enhancement at issue was recodified at § 2G2.2(b)(3)(B).

distribute files containing child pornography to others. The District Court found that Mr. Geiner enabled the file-sharing feature to allow others to access his files because he wanted to be able to acquire child pornography on the file-sharing network at a faster speed. In other words, he made his files available to others on the network *in anticipation of* a faster downloading speed. Believing that others would configure their systems to allow priority downloading, Mr. Geiner expected to become a priority trader who could acquire shared files more quickly. Although he had no definite guarantee that others would so configure their systems, he reasonably believed in that possibility and anticipated the benefit of acquiring files at a more rapid speed.

Mr. Geiner acknowledges that he configured his software to permit the sharing of his files because he wanted to be able to download images at a faster speed. Nevertheless, he contends that he did not expect to receive a "thing of value" because he would have had access to the images he sought without allowing others to access his files. He argues that, because he could have downloaded the same images without allowing this access, he did not expect to receive a thing of value. In short, he argues that he did not expect to receive a benefit when he configured the software on his computer to allow for the distribution of files containing child pornography.

We agree that Mr. Geiner did not expect to access images and other files in exchange for allowing other network users to access his files. Although other

courts have held that, by sharing files on a file-sharing network, a defendant necessarily expects to receive a "thing of value" (i.e., access to other users' files), *United States v. Griffin*, 482 F.3d 1008, 1013 (8th Cir. 2007); *United States v. McVey*, 476 F. Supp. 2d 560, 563 (E.D. Va. 2007), we do not think the language of U.S.S.G. § 2G2.2(b)(3)(B) permits such a broad interpretation. To apply the enhancement to every defendant who shares files on a peer-to-peer file-sharing network would be to disregard the connection between distribution and "thing of value" in the provision's requirement that "distribution [be] *for* the receipt, or expectation of receipt, of a thing of value." U.S.S.G. § 2G2.2(b)(3)(B) (emphasis added). Although a defendant may share files on a file-sharing network with the expectation of receiving other users' files in return, this is not necessarily true in every case. Indeed, the present case illustrates the exception. Mr. Geiner originally chose not to share his files with others on the network, but he still used the software to access other users' files. Thus, he did not begin sharing files solely for the purpose of receiving them.

We therefore disagree with the Eighth Circuit's holding that the enhancement automatically applies "to a defendant who downloads and shares child pornography files via an internet peer-to-peer file-sharing network, as these networks exist—as the name 'file-sharing' suggests—for users to share, swap, barter, or trade files between one another." *Griffin*, 482 F.3d at 1013; *see also McVey*, 476 F. Supp. 2d at 563 ("[T]he very purpose of belonging to any file-

-14-

sharing group is to facilitate the receipt of files from others by agreeing to allow other persons['] access to the files on one's own computer."). This broad interpretation allows for the application of the enhancement based merely on a defendant's installation of file-sharing software or his use of a file-sharing network. Although file sharing may be the purpose of these networks, in some cases, users may be able to choose *not* to share files while still retrieving files from others. Thus, a defendant who distributes child-pornography files by sharing them on a file-sharing network does not necessarily do so in exchange for similar files, particularly when the defendant understands that these files are available even if he chooses not to share his own. Rather, whether a defendant distributes files containing child pornography *for* the receipt, or expectation of receipt, of other files available on the network is a question of fact properly resolved on a case-by-case basis by the sentencing court.

In the case before us, although Mr. Geiner did not distribute child pornography with the expectation of receiving child pornography in return, he nevertheless expected to receive a "thing of value." As the District Court found, once he allowed others to access his files, Mr. Geiner expected to be able to access and download files containing child pornography at a faster speed. A "thing of value" need not have objective value, but may be something of value to the defendant, as the example in the application note to U.S.S.G. § 2G2.2(b)(3)(B) illustrates: "For example, in a case involving the bartering of

child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." *Id.* The provision's history also indicates that a "thing of value" may be something valued by the defendant. Prior to its 2000 amendment, § 2G2.2(b)(2) only provided for a five-level enhancement in cases of distribution for pecuniary gain. In 2000, the Guidelines provision was amended to include an enhancement for "distribution for the receipt, or expectation of receipt, of a thing of value, *but not for pecuniary gain*." *Id.* (emphasis added); *see also* U.S.S.G. Appx. C, vol. II, Amendment 592 (explaining that the guideline was amended to make clear that it "applies to the distribution of pornography both for monetary remuneration and a non-pecuniary interest").

Here, the record supports the conclusion that Mr. Geiner valued the faster downloading speed he gained in return for allowing others to access his files containing child pornography. Furthermore, as Mr. Geiner concedes, a "thing of value" need not be tangible. *See United States v. Nilsen*, 967 F.2d 539, 542 (11th Cir. 1992) (per curiam) (noting that "Congress' frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelope both tangibles and intangibles"). The faster downloading speed is therefore a "thing of value" in the context of this case.

In short, Mr. Geiner distributed child pornography with the expectation that

he would receive a thing of value, that is, faster downloading capabilities enabling him to obtain child pornography more easily and efficiently. Thus, the District Court did not err in applying the enhancement in this case, and because the court sentenced Mr. Geiner within the applicable Guidelines range, his sentence is entitled to a presumption of substantive reasonableness. *See Kristl*, 437 F.3d at 1055. As a practical matter, however, the application of the presumption is unnecessary in this case. Because, as we explain below, Mr. Geiner challenges the reasonableness of his sentence on procedural grounds, the substantive reasonableness of the sentence is not at issue.

B.     Consideration of the § 3553(a) Sentencing Factors

Mr. Geiner contends that his sentence is both unreasonable under 18 U.S.C. § 3553(a) and unconstitutional because the District Court failed to consider the sentencing factors delineated in § 3553(a)[7] and consequently applied the Guidelines in a mandatory fashion in violation of *United States v. Booker*, 543 U.S. 220 (2005). He bases his argument on the fact that the court notified the parties at the sentencing hearing that it intended to impose a Guidelines sentence

---

[7]Under 18 U.S.C. § 3553(a), a sentencing court must consider: (1) the nature of the crime and the characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the crime, deter criminal conduct, protect the public, and provide the defendant with needed training or treatment; (3) the kinds of available sentences; (4) the sentencing range under the advisory Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid sentencing disparities among similar defendants; and (7) the need to provide restitution to any victims of the crime.

and would not consider "impermissible bases for departure" (namely, departures not sanctioned by the Guidelines).

Although "[r]easonableness review has both procedural and substantive components," *Hildreth*, 485 F.3d at 1127 (internal quotation marks omitted), Mr. Geiner does not challenge his sentence as substantively unreasonable. His contention that the District Court failed to consider the statutory factors contained in § 3553(a) is a procedural argument challenging the District Court's method for calculating his sentence. *Kristl*, 437 F.3d at 1055 ("[T]he reasonableness standard of review . . . necessarily encompasses both the reasonableness of the length of the sentence [i.e., substantive reasonableness], as well as the *method* by which the sentence was calculated [i.e., procedural reasonableness]."); *Atencio*, 476 F.3d at 1102 ("In setting a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range and apply the factors set forth in § 3553(a)."). In addition, Mr. Geiner challenges his sentence on constitutional grounds. He argues that, by failing to consider the § 3553(a) factors, the District Court applied the Guidelines in a mandatory fashion, using judge-found facts to enhance his sentence in violation of the Sixth Amendment. *See United States v. Booker*, 543 U.S. 220 (2005).

Mr. Geiner did not, however, raise these arguments below or otherwise object to the procedure by which the District Court determined his sentence. We therefore limit our review to plain error: "Plain error occurs when there is (i)

error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). But even under the "more exacting" review we apply to allegations of constitutional error, *see United States v. Brooks*, 438 F.3d 1231, 1244 (10th Cir. 2006), we need not look beyond the first prong of the plain-error analysis here because the District Court committed no error.

As we have repeatedly noted, a district court "need not recite any magic words to show us that it fulfilled its responsibility to be mindful of the [§ 3553(a)] factors that Congress has instructed it to consider." *United States v. Pruitt*, 487 F.3d 1298, 1303–04 (10th Cir. 2007) (quotation omitted). Indeed, we have held that "a specific discussion of Section 3553(a) factors is not required for sentences falling within the ranges suggested by the Guidelines." *Ruiz-Terrazas*, 477 F.3d at 1202. Although a more general discussion is not necessarily the best practice, it is all that procedural reasonableness requires when a court imposes a sentence within the applicable Guidelines range. *Id.* In discussing the explanation required to support a Guidelines sentence, the Supreme Court recently described the requisite level of detail in similar terms:

> [W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional

mandates) in the typical case, and that the judge has found that the case before him is typical.

*Rita*, 127 S. Ct. at 2468. In *Rita*, the sentencing court's statement of reasons was "brief but legally sufficient." *Id.* at 2469. Although the Court acknowledged that the sentencing court "might have said more," it concluded that an extensive explanation for a Guidelines sentence was not required because the context and the record demonstrated that "the sentencing judge considered the evidence and arguments." *Id.*

Similarly, the context and the record in the present case clearly indicate that the District Court considered the evidence and the arguments. In particular, the record makes clear that the court rested its "decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence" in this case. *See Rita*, 127 S. Ct. at 2468. The District Court specifically explained that, in the court's judgment, a Guidelines sentence in this "kind of case" reflects the purposes of § 3553(a). In addition, in addressing Mr. Geiner's argument for a departure based on diminished capacity, *see* U.S.S.G. § 5K2.13, the court discussed various § 3553(a) factors, including the nature of the offense and characteristics of the defendant, § 3553(a)(1), the need for the sentence to protect the public, § 3553(a)(2), the applicable Guidelines range, § 3553(a)(4), and pertinent policy statements issued by the Sentencing Commission, § 3553(a)(5). Moreover, in announcing the sentence prior to its imposition, the court explicitly

stated that its judgment was "[p]ursuant to the Sentencing Reform Act of 1984 and especially considering those factors set forth in 18 U.S.C. § 3553(a)." Hence, as the record demonstrates, the District Court treated the Guidelines as advisory and considered the § 3553(a) factors in making its sentencing determination. It did not, therefore, err in calculating Mr. Geiner's sentence.

We note, however, that Mr. Geiner does not argue that the District Court prevented him from commenting on a matter "related to an appropriate sentence" under Federal Rule of Criminal Procedure 32. Under Rule 32(i), the sentencing court "must allow the parties' attorneys to comment on the probation officer's determinations and *other matters relating to an appropriate sentence*." Fed. R. Crim. P. 32(i)(1)(C) (emphasis added). Although Mr. Geiner argues that the District Court "limited" the parties' arguments to permissible departures under the Guidelines, he does not argue that the court actually refused to hear a specific argument under § 3553(a). That is, Mr. Geiner does not argue that the District Court refused to hear an argument that he wished to make.[8] Consequently, in upholding Mr. Geiner's sentence as procedurally reasonable, we are not suggesting that a district court may refuse to hear arguments for modifying a

_____

[8]In addition, nothing in the record suggests that the District Court refused to hear any of Mr. Geiner's arguments. After the court notified the parties that it intended to impose a Guidelines sentence, Mr. Geiner did not object or otherwise indicate that he wished to introduce evidence for a departure or variance based on § 3553(a). Instead, Mr. Geiner's counsel indicated that the testimony she planned to present was related to Mr. Geiner's diminished capacity, a ground for departure under the Guidelines. *See* U.S.S.G. § 5K2.13.

Guidelines sentence when they are based solely on § 3553(a).  To impose a procedurally reasonable sentence, the district court must comply with the Federal Rules of Criminal Procedure.  Had the court prevented Mr. Geiner from commenting on a matter related to an appropriate sentence, we would face a different question.  Today, we simply hold that the District Court did not apply the Guidelines in a mandatory fashion and its method for calculating Mr. Geiner's sentence was procedurally reasonable.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Geiner's sentence.