FILED
United States Court of Appeals
Tenth Circuit

October 23, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DERICK EUGENE CORDOVA,

        Defendant – Appellant.

No. 09-8020
(D. Wyo.)
(D. Ct. No. 1:08-CR-00164-CAB-1)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Circuit Chief Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R.

34.1(G). This case is submitted for decision on the briefs.

Derick Eugene Cordova pled guilty to conspiracy to possess with intent to

distribute and to distribute 500 grams or more of methamphetamine and was sentenced to

216 months imprisonment. He appeals from his conviction and sentence, arguing his

guilty plea was involuntary because the district court failed to advise him of the

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

maximum penalty before accepting his guilty plea as required by Rule 11 of the Federal Rules of Criminal Procedure (Rule 11). He also argues his trial counsel was ineffective and his sentence is procedurally unreasonable. We affirm.

## I. BACKGROUND

Between October 2005 and June 2008, Cordova supplied methamphetamine to Jason Claycomb and Mia Brown, who then distributed it in Gillette, Wyoming. Cordova was indicted with conspiracy to possess with intent to distribute and to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846.

Cordova pled guilty to the indictment without a plea agreement. At the change of plea hearing, the government said 1) it believed Cordova's base offense level would be 36 and 2) defense counsel estimated Cordova's criminal history category would be either III or IV. Based on those estimates and applying a three-level downward adjustment to the base offense level for acceptance of responsibility, the government predicted Cordova's advisory guideline range would be either 168 to 210 months (criminal history of III) or 188 to 235 months (criminal history of IV). Defense counsel informed the court there was no plea agreement because he believed the base offense level was 34, not 36 as the government alleged. The court advised Cordova of the nature of the offense and informed him it carried with it a mandatory minimum 10-year sentence. The court failed to inform Cordova of the maximum statutory penalty, life imprisonment. *See* 21 U.S.C. §§ 841(b)(1)(A). After reviewing with Cordova the rights he would be relinquishing by pleading guilty and obtaining a factual basis for the plea, the court accepted Cordova's

guilty plea.

A PSR was prepared. It found the offense involved between 5 and 15 kilograms of methamphetamine, resulting in a base offense level of 36. Applying a 3-level downward adjustment for acceptance of responsibility, the total offense level was 33. The PSR determined Cordova had 14 criminal history points, establishing a criminal history category of VI. Based on a total offense level of 33 and a criminal history category of VI, the advisory guideline range was 235 to 293 months. Cordova objected to the PSR, arguing he qualified for a mitigating role adjustment under USSG §3B1.2 and the offense involved less than 5 kilograms of methamphetamine.

The parties eventually reached an agreement to jointly recommend a 16-year (192-month) sentence with a waiver of appellate rights.[1] The government said 16 years was a fair sentence because it had previously offered Cordova a 14-year (168-month) sentence in exchange for his guilty plea. Defense counsel argued in support of his objections to the PSR. He also requested a downward departure or variance, claiming criminal history category VI substantially overrepresented the seriousness of Cordova's criminal history which did not include felonies and mainly consisted of domestic violence charges arising out of "a bad relationship with one particular woman." (R. Vol. III at 89.) Finally, defense counsel argued a variance was warranted because Cordova, following counsel's advice, had imprudently rejected the government's earlier offer of 14 years. Counsel explained he had met with a senior probation officer prior to advising Cordova concerning the government's offer and the probation officer had agreed with defense

---

[1] The government has made no attempt to enforce any waiver of appellate rights.

counsel that Cordova's criminal history category would be IV. Their mutual mistake occurred because the report prepared by pretrial services showed Cordova received a 180-day sentence in 2001 which defense counsel and the probation officer believed was a single sentence for a single conviction. In fact, the 180-day sentence consisted of several sentences for several convictions.

The court overruled Cordova's objections to the PSR as well as his request for a downward departure or variance based on an overrepresentation of criminal history. It concluded Cordova had not been convicted of a felony only because of "a weakness in the Colorado criminal laws." (R. Vol. III at 115.) It said his "almost constant domestic violence incidents . . . indicate[d] . . . a contempt for the weaker sex [and] a disregard for authority." (*Id.* at 115.) Accordingly, the court determined Cordova's total offense level was 33 (lower than the pre-plea estimate of either the government or defense counsel) and his criminal history category was VI (higher than any pre-plea estimate), resulting in an advisory guideline range of 235 to 293 months. Over the government's objection, the court then gave Cordova the opportunity to withdraw his plea. Cordova declined. Nevertheless, during his sentencing allocution to the court, Cordova said: "I didn't think this was going to turn out like this. I would have definitely jumped on 14 years." (*Id.* at 119.) The court rejected the parties' joint recommendation for a 16-year sentence. However, because Cordova spared the government the expense of a trial and because of the personal pleas of his family for leniency, the court sentenced Cordova to 216 months (18 years) imprisonment, below the advisory guideline range.

## II.    DISCUSSION

Cordova argues his guilty plea was involuntary because the district court failed to advise him of the maximum penalty applicable to him before accepting his guilty plea as required by Rule 11 of the Federal Rules of Criminal Procedure.  He further argues his trial counsel was ineffective and his sentence was procedurally unreasonable.

A.    <u>Rule 11 violation</u>

Normally, we review de novo a district court's compliance with Rule 11.  *United States v. Gabriele*, 24 F.3d 68, 70 (10th Cir. 1994).  However, when, as here, a defendant fails to raise a Rule 11 error in the district court, we review for plain error.  *United States v. Vonn*, 535 U.S. 55, 58-59 (2002).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted).

Rule 11(b)(1)(H) provides in relevant part: "Before the court accepts a plea of guilty . . . , the court must address the defendant personally in open court.  During this address, the court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release."  Cordova argues his guilty plea was involuntary because the district court failed to comply with this rule.  He says the court told him the maximum possible sentencing guideline range would be either 168 to 210 or 188 to 235 months imprisonment; he was never advised the maximum penalty could be 235 to 293 months.  But the "maximum possible penalty" under Rule 11(b)(1)(H) refers to the maximum

5

*statutory* penalty, not the maximum guideline range. *See* Fed. R. Crim. P. 11, advisory committee's note to 1974 amendments (the objective of informing defendant of the maximum penalty is to insure he knows the maximum sentence the court may impose; "[t]his information is usually readily ascertainable from the face of the statute defining the crime"); *see also United States v. Gomez-Cuevas*, 917 F.2d 1521, 1526-27 (10th Cir. 1990) (examining former Rule 11(c)(1) which, prior to 1999, had similar language as current Rule 11(b)(1)(H)). Therefore, the court's failure to inform Cordova of the maximum applicable guideline range prior to accepting his guilty plea was not error.[2]

As the government points out, however, the court never advised Cordova of the maximum statutory penalty. Assuming Cordova is also raising this error,[3] the first two

---

[2] Rule 11(b)(1)(M) says:

> Before the court accepts a plea of guilty . . . , the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a).

Cordova has not argued the court failed to comply with this subsection. In any event, under its plain terms, Rule 11(b)(1)(M) does not require a court to advise a defendant of the applicable guideline range.

[3] Cordova never mentions the court's failure to inform him that the maximum statutory penalty for his offense is life imprisonment. He merely says he was not properly informed the maximum penalty was 235 to 293 months, obviously referring to the maximum guideline range. However, he generally states: "The inaccuracies in advising him of the applicable Guideline range and the district court's failure to inform him of the maximum possible penalty as required by Rule 11 undermined the plea process and resulted in an involuntary and uninformed guilty plea." (Appellant's Op. Br. at 21.)

requirements for plain error have clearly been met and the government concedes so. Nevertheless, Cordova has not shown this error affected his substantial rights.

A defendant attempting to establish that a Rule 11 error has affected substantial rights "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). We "may consult the whole record when considering the effect of [a Rule 11] error on substantial rights." *Vonn*, 535 U.S. at 59.

Cordova alleges that had he known he would be facing a total offense level of 36 and a criminal history category of VI, he would not have pled guilty without a plea agreement but instead would have accepted the government's initial 14-year offer. But Cordova's rejection of the 14-year offer had nothing to do with the court's failure to inform him of the maximum statutory penalty. According to the record, Cordova rejected the 14-year offer based on counsel's advice concerning his base offense level and criminal history category.[4] Indeed, the court's failure to inform Cordova of the statutory maximum penalty could not have influenced Cordova's rejection of the 14-year offer as that failure occurred <u>after</u> Cordova had already rejected the offer. Moreover, a "Penalty Summary" showing the penalty for Cordova's offense is 10 years to life imprisonment was attached to both the complaint and indictment. (R. Vol. I at 16, 18.) Therefore, Cordova was given notice of the statutory maximum prior to pleading guilty.

---

[4] This is not to say we believe counsel was constitutionally ineffective. As we explain below, we decline to decide this issue in the first instance.

7

B.      Ineffective Assistance of Counsel

Cordova argues his guilty plea was involuntary because his attorney provided ineffective assistance of counsel by underestimating the applicable advisory guideline sentencing range and then advising him to reject the government's offer of a 14-year sentence. His attorney's deficient advice exposed him to an additional 6 to 24 years imprisonment under the guidelines. He says that but for his counsel's bad advice, he would have accepted the government's 14-year offer rather than enter a guilty plea without the benefit of a plea agreement. Therefore, counsel's ineffectiveness cost him an additional four years of imprisonment.

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) (citations omitted); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). Only in rare instances, where the record is sufficiently developed for effective review, will an appellate court resolve an ineffective assistance of counsel claim not raised in the trial court. *United States v. Wynne*, 993 F.2d 760, 765-66 (10th Cir. 1993) (citation omitted). However, "even if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings . . . so the reviewing court can have the benefit of the district court's views." *Galloway*, 56 F.3d at 1240. "An opinion by the district court is a valuable aid to

8

appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand." *Id.*

Because further development of the record and an opinion by the district court would be helpful to our review, we decline to address Cordova's ineffective assistance of counsel claim on direct appeal.

C.      Procedural Unreasonableness

Cordova complains his sentence is procedurally unreasonable because the district court did not consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when it imposed sentence. It merely said that because he spared the government the expense of trial and due to his family's pleas for leniency, it would impose a 216-month sentence.

We review sentences for reasonableness under a deferential abuse of discretion standard, evaluating factual findings for clear error and legal determinations de novo.[5] *United States v. Parker*, 551 F.3d 1167, 1173 (10th Cir. 2008) (quotations omitted); *see also United States v. Mendoza*, 543 F.3d 1186, 1190 (10th Cir. 2008). "Reasonableness has both procedural and substantive components." *Id.* Cordova complains only that his sentence is procedurally unreasonable. "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the

---

[5] The government argues we should review this claim for plain error rather than for an abuse of discretion because defense counsel only generally objected to "the procedures used [by the court] to determine Mr. Cordova's sentence" and did not specifically object to the court's failure to apply the § 3553(a) factors. (R. Vol. III at 135.) We need not resolve the issue because even applying an abuse of discretion standard we find no error.

9

Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Id.* (quotation omitted).

Here, the district court did not expressly refer to the § 3553(a) factors. But it obviously considered them. It properly calculated the guideline range and addressed Cordova's objections to that range. *See* § 3553(a)(4) ("The court, in determining the particular sentence to be imposed, shall consider . . . the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines."). It considered "the nature and circumstances of the offense" under § 3553(a)(1), noting Cordova was the "fountainhead of [the] conspiracy, because without [him] the dope would not have been provided, or certainly not in as large quantities as [he was] able to furnish." (R. Vol. III at 129-30.) It also took into account "the history and characteristics of the defendant" under § 3553(a)(1). It said Cordova's criminal history of "almost constant domestic violence incidents and assaults of a woman," demonstrated a "contempt for the weaker sex [and] a disregard for authority." (*Id.* at 115.) Finally, the court considered the need for the sentence imposed to "reflect the seriousness of the offense" and "protect the public from further crimes of the defendant" under § 3553(a)(2)(A), (C), by recognizing the "problem of dopers in our society" and that "a stern hand, a stern eye must always be cast on them." (*Id.* at 130.) "As we have repeatedly noted, a district court need not recite any magic words to show us that it fulfilled its responsibility to be mindful of the

§ 3553(a) factors that Congress has instructed it to consider." *United States v. Geiner*,

498 F.3d 1104, 1113 (10th Cir. 2007) (quotations omitted).

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge