**UNITED STATES of America, Appellee,**

v.

**James MANERI, Defendant–Appellant.**

**Docket No. 02–1703.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 21, 2003.

Decided: Nov. 26, 2003.

Yuanchung Lee, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

W.S. Wilson Leung, Assistant United States Attorney (William E. Craco, Assistant United States Attorney, of counsel; James B. Comey, United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Before: WINTER, CABRANES, and SACK, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

James Maneri appeals from a judgment of conviction entered on December 13, 2002, in the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge* ), following a plea of guilty to two counts of transporting child pornography by computer in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(1). On appeal, Maneri claims that the District Court erred when it applied to him U.S.S.G. § 2G2.2(b)(2)(B)'s five-level enhancement for the distribution of child pornography for the receipt, or the expectation of receipt, of a thing of value. According to Maneri, the five-level enhancement may be applied only when there is a specific agreement or understanding between the distributor of child pornography and its recipient that the distributor would receive a thing of value.

We disagree, and hold that the District Court properly applied the five-level enhancement to Maneri notwithstanding the absence of a *quid pro quo* agreement between Maneri and the law enforcement officer posing as a minor in an electronic "chat room." Accordingly, we affirm.

## BACKGROUND

Maneri's arrest and conviction arose out of an investigation into the use of the Internet, and electronic "chat rooms" in particular, by adults seeking to transmit images of child pornography and entice minors into sexual activity. Beginning

about August 16, 2001, a detective from the Rockland County Sheriff's Office, using the screen name "nygrl12" and the alias "Cheryl," logged on to a network that contains "chat rooms" and engaged in chats with Maneri, who used the screen names "mulva16" and "hold it." These chats were sexually explicit, and they included discussions about meeting for sex.

The transcripts of the chat room discussions between Maneri and "nygrl12," who pretended to be a 13–year old girl, reveal that, over the course of their interaction, Maneri discussed pornographic material with "nygrl12" and repeatedly expressed a desire to engage in sexual activity with "nygrl12." A few examples suffice: During a chat session on August 16, 2001, Maneri invited "nygrl12" to his home to watch pornographic movies and promised to perform oral sex on her while she watched the movies. On August 19, he suggested to "nygrl12" that he visit her so they could make their "own movie." On August 25, 2001, Maneri described to "nygrl12" sexual encounters he claimed to have had with 11–year–old and 7–year–old girls. These discussions about sexual activity and pornography continued into October 2001.

The transcripts reveal also that Maneri and "nygrl12" discussed how and when they could meet. On August 25, 2001, Maneri, after describing his sexual encounters with two girls, commented: "maybe we could go to a movie one day … the best time would be when it's cold outside/this way we would have coats, and the coats will hide our hands … we could feel each other." On August 29, 2001, Maneri and "nygrl12" discussed in detail arranging a meeting at Maneri's house. Among other things, "nygrl12" said that "maybe on Sunday I can get away for 5 hours," and Maneri agreed to pick her up. Maneri then asked where "nygrl12" lived, to which

she responded "lower east side" and promised to give more details later. On September 2, 2001, the planning resumed when "nygrl12" offered to meet Maneri at a hotel.

Finally, the transcripts show that Maneri sent electronic files to "nygrl12" depicting sexual activity involving minors. On August 30, 2001, the day after Maneri and "nygrl12" discussed possible meeting places, and on the same day as a sexually explicit chat, Maneri sent "nygrl12" a file depicting an adult male engaging in sexual intercourse with a prepubescent girl. On September 4, 2001, two days after a discussion in which Maneri again expressed a desire to find a good place to meet "nygrl12" and during another sexually explicit chat, Maneri sent seven files to "nygrl12" depicting a prepubescent girl touching an adult male's genitals and performing fellatio on the adult male.

On November 2, 2001, Maneri was arrested and eventually indicted for two counts of transporting child pornography by computer through interstate and foreign commerce in connection with his sending electronic files to "nygrl12" on August 30 and September 4, 2001. On January 28, 2002, Maneri pleaded guilty, without a plea agreement, to both counts in the indictment.

The District Court sentenced Maneri on November 13, 2002. At sentencing, the Court advised the parties that, after reviewing the record, it had concluded that the five-level enhancement for distribution for the receipt, or expectation of receipt, of a thing of value under U.S.S.G. § 2G2.2(b)(2)(B) would be applied. Beginning from an offense level of 17 and factoring in other relevant enhancements and deductions, the Court thus concluded that Maneri's adjusted offense level was 23, which, combined with his Criminal History Category, yielded a sentencing range of 46

to 57 months' imprisonment. Maneri was sentenced to a term of imprisonment of 46 months, a period of 2 years' supervised release, and a $200 special assessment.

## DISCUSSION

Maneri appeals the five-level enhancement to his sentence pursuant to U.S.S.G. § 2G2.2(b)(2)(B). Section 2G2.2(b)(2) was amended in 2000 to provide the following enhancements for distribution of child pornography:

(2) (Apply the Greatest) If the offense involved:

(A) Distribution for pecuniary gain, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the retail value of the material, but by not less than 5 levels.

(B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels.

(C) Distribution to a minor, increase by 5 levels.

(D) Distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by 7 levels.

(E) Distribution other than distribution described in subdivisions (A) through (D), increase by 2 levels.[1]

Over defendant's objection, the District Court applied the five-level enhancement under U.S.S.G. § 2G2.2(b)(2)(B). The Court held that the phrase "thing of value" includes intangibles, and found that Maneri distributed his pornographic files with the expectation of receiving a "thing of value," namely a sexual encounter with the recipient of the files. It specifically noted that "the facts here go beyond hope, to expectation."

■ We conclude that the District Court did not err when it concluded that U.S.S.G. § 2G2.2(b)(2)(B) does not require a specific agreement or understanding between the distributor and the recipient of child pornography. Rather, as the Court held, the provision is implicated if the distributor expects—rather than just hopes—to receive a thing of value, including the opportunity for a sexual encounter, in return for distributing child pornography.

### A. The District Court's Conclusion of Law

■ We review a district court's legal interpretation of the Sentencing Guidelines *de novo, United States v. Mullings,* 330 F.3d 123, 124 (2d Cir.2003), and its findings of fact for clear error, *United States v. Hamilton,* 334 F.3d 170, 188 (2d Cir. 2003). Accordingly, we review *de novo* the District Court's conclusion that U.S.S.G. § 2G2.2(b)(2)(B) does not require a specific

---

**1.** Before the 2000 Amendment, section 2G2.2(b)(2) provided simply that "[i]f the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels." U.S.S.G. § 2G2.2(b)(2) (1999) (amended 2000).

The Reason for Amendment states that the amendment was intended, among other things, to create a multitiered scheme to punish those who use child pornography to desensitize children to sexual activity:

These varying levels are intended to respond to increased congressional concerns ... that pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity.

U.S. Sentencing Guidelines Manual, app. C, supp., amend. 592, at 51 (effective Nov. 1, 2000).

agreement or understanding between the distributor and the recipient of child pornography. However, we can vacate or modify the District Court's factual finding that Maneri distributed child pornography with the expectation that he would receive a sexual encounter with "nygrl12" only if it was clearly erroneous.

We begin with the plain meaning of the guideline provision at issue. *See Mullings,* 330 F.3d at 124–25. That provision provides that "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" triggers its application. U.S.S.G. § 2G2.2(b)(2)(B). This phrase as a whole is defined, in Application Note 1 to section 2G2.2, as "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." *Id.,* cmt. n. 1. "Thing of value" is defined by the same Application Note as "anything of valuable consideration." *Id.*

■ Maneri does not dispute the meaning of the word "distribution," or that he distributed child pornography. *See* Appellant's Brief at 18–19 (arguing for applicability of a two-level enhancement pursuant to section 2G2.2(b)(2)(E), which applies to distribution of child pornography). The meaning of the term "thing of value" also is not at issue, as Maneri does not dispute that the opportunity for a sexual encounter is a "thing of value." *See id.* at 18 (arguing only that there was no evidence of actual "agreement" to exchange pornography for a "sexual tryst"). Thus, the key word in this case is "expectation." That word has been defined as "the act or action of looking forward: anticipation." *Webster's Third New International Dictionary* 799 (1976); *accord Black's Law Dictionary* 598 (7th ed.1999). Accordingly, based on the ordinary meaning of the word "expectation," U.S.S.G. § 2G2.2(b)(2)(B)'s five-level enhancement applies when a defendant distributes child pornography in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value.

Maneri argues that, notwithstanding the plain meaning of the word "expectation," section 2G2.2(b)(2)(B) requires a specific agreement or understanding between the distributor and the recipient of child pornography. In support of that argument, Maneri relies on Application Note 1's use of the word "transaction" ("any transaction, including bartering or other in-kind transaction . . .") in its explanation of the guideline's phrase "[d]istribution for the receipt, or expectation of receipt, of a thing of value." Maneri cites the following definition of the word "transaction": an "act, process, or instance of transacting; a communicative action or activity involving two parties or two things reciprocally affecting or influencing each other." *Webster's Third New International Dictionary* 2425 (1986).

Contrary to Maneri's view, a "transaction" does not necessarily include a specific agreement. Instead, according to the very definition Maneri cites, it includes a "communicative activity . . . involving two parties . . . reciprocally affecting or influencing each other." *Id.* Maneri's distributions of child pornography to "nygrl12" fall within this definition. The dissemination of the pornographic images to "nygrl12" over the Internet during discussions about pornography and the possibility of a sexual encounter was plainly "communicative activity." In light of the fact that the distributions occurred during ongoing discussions of Maneri's video collection and how "nygrl12" might view it in person, there is no question that the communicative activity involved two parties. Finally, it is evident from the transcripts that Maneri sent the pornographic material in response to "nygrl12"'s expressions of interest in his

videos and in sexual activity generally; thus, "nygrl12," the 13–year–old girl with whom Maneri believed he was communicating, was the catalyst for his action.

Maneri argues also that the examples in the Application Note, *i.e.*, "bartering [and] other in-kind transaction[s]," further demonstrate that the enhancement may be imposed only when defendant's "expectation" is born of an understanding or agreement to exchange child pornography for a "thing of value." However, Application Note 1's use of "bartering [and] other in-kind transaction[s]" as examples of conduct to which section 2G2.2(b)(2)(B) applies is not determinative of the subsection's full reach. The word "including" before the examples indicates that *any* transaction—so long as it involves the "expectation" of the "receipt" of a "thing of value"—suffices to trigger the subsection's enhancement. Thus, although it is certainly true that a "transaction" within the meaning of Application Note 1 to section 2G2.2(b)(2)(b) *might* be characterized by a specific agreement or understanding, it *need not* embrace an agreement or understanding to give rise to an "expectation" sufficient to invoke section 2G2.2(b)(2)(B).

### B. The District Court's Finding of Fact

■ The District Court having properly held that section 2G2.2(b)(2)(B) applies to a defendant who distributes child pornography with the expectation of the receipt of a thing of value, including a sexual encounter, the sole remaining question is whether the record supports the District Court's finding that Maneri had such an expectation. We conclude that it does.

The District Court did not clearly err when it found, based on an examination of the transcripts, that Maneri's desire for a sexual encounter with "nygrl12" went "beyond hope, to expectation." As described above, the discussions with "nygrl12" gave Maneri ample reason to believe that, after he engaged in sexually-explicit discussion with "nygrl12" and sent images to her depicting sex between an adult male and prepubescent girls, "nygrl12" would meet him for a sexual encounter. Moreover, the discussions demonstrate that Maneri anticipated such an encounter; indeed, Maneri and "nygrl12" chose times and places that they might meet. In light of this evidence, the District Court did not clearly err in finding that Maneri's conduct evinced an "expectation" sufficient to invoke section 2G2.2(b)(2)(B). In holding that Maneri's conduct evinced an "expectation" within the meaning of section 2G2.2(b)(2)(B), we express no view as to the evidence necessary to establish that a defendant acted in response to an "expectation" in a more difficult case—for example, where offensive materials are transmitted after only one party (*e.g.*, an undercover law enforcement officer) has made reference to the "thing of value" the defendant might "expect" to receive.

### CONCLUSION

For the reasons stated above, the judgment of the District Court is affirmed. We hold that U.S.S.G. § 2G2.2(b)(2)(B)'s five-level enhancement, which is implicated by the distribution of child pornography for the receipt, or the expectation of receipt, of a thing of value, may apply notwithstanding the absence of a *quid pro quo* agreement between the distributor and the recipient of child pornography. We hold also that the District Court did not clearly err when it found that defendant—who had repeatedly planned a meeting with "nygrl12"—expected to receive a "thing of value," namely the opportunity for a sexual encounter, when he sent "nygrl12" child pornography.