In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 07-1015

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW W. WHITED,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 05 CR 50060—**Philip G. Reinhard**, *Judge.*

_____

ARGUED SEPTEMBER 13, 2007—DECIDED AUGUST 25, 2008

_____

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Defendant Matthew Whited was
charged with possession, receipt, and distribution of
child pornography based on evidence gathered in a
search of his home pursuant to an anticipatory warrant.
Federal agents obtained the warrant after Whited ordered
a videotape of child pornography from an undercover
postal inspector; the warrant was premised upon a suc-

cessful controlled delivery of the package Whited had ordered. There were two conditions precedent to the search: Whited's acceptance of the package and entry into his home with it.

Whited challenged the legality of the search under the Fourth Amendment, arguing that one of the conditions precedent in the warrant did not occur—he claimed he was on his front stoop when he accepted the delivery and never entered his house after signing for the package. Federal agents executing the warrant testified otherwise. The district court believed the agents and denied the suppression motion.

Whited pleaded guilty and reserved the right to appeal the denial of his suppression motion. At sentencing the district court applied the sentencing guidelines enhancement specified in U.S.S.G. § 2G2.2(b)(3)(B), which adds five levels to the base offense level when the distribution of child pornography is for "receipt, or expectation of receipt, of a thing of value." The factual basis for this enhancement was Whited's transmission of child-pornography images to an e-mail correspondent with whom he was trying to arrange a sexual encounter.

Whited now appeals his conviction and sentence, challenging the denial of his suppression motion, the application of the § 2G2.2(b)(3)(B) enhancement, and the reasonableness of his sentence under 18 U.S.C. § 3553(a). We affirm. Anticipatory warrants are constitutional, and although the testimony at the suppression hearing was conflicting, the district court's determination that the warrant's triggering conditions had occurred was not

clear error. The court properly applied the § 2G2.2(b)(3)(B) sentencing enhancement based on the e-mail correspondence establishing that Whited reasonably expected his transmission of child pornography would lead to the sexual encounter he and his e-mail correspondent were then discussing. Finally, the 300-month sentence imposed by the district court was within the applicable guidelines range and is therefore presumed reasonable; Whited's perfunctory challenge to the district court's consideration of the § 3553(a) factors is not enough to rebut the presumption.

## I.  Background

In March 2004 an undercover postal inspector received an e-mail responding to an advertisement the inspector had posted on the Internet offering child-pornography videos. The e-mail came from an address later determined to be Whited's. After an initial exchange of e-mails, Whited sent the inspector $30 for a video depicting child pornography. The inspector then forwarded this information on to the federal Child Exploitation Strike Force in Chicago.

The Strike Force then arranged for a controlled delivery of the package and obtained an anticipatory warrant permitting agents to search Whited's residence after two conditions were satisfied: (1) Whited accepted the control package; and (2) he entered his house with it. On July 29, 2004, Postal Inspector Lary Maxwell, dressed as a postal carrier, approached Whited's home with the control package and rang the doorbell. Michael Hoeft, a friend of

Whited's 12-year-old son who had stayed overnight on a "sleepover," answered the door and then called Whited. Whited came down the stairs, accepted the package, and walked to his car. Whether he was inside or outside of the house when he accepted the package is disputed; we will discuss the testimony in more detail in a moment. As Whited was getting into his car, he was detained by FBI agents.

The agents then searched the home and found child pornography in a locked suitcase in a closet, on compact discs, and on the hard drive of Whited's computer. The agents also discovered e-mail correspondence on Whited's computer between Whited and a man named "Will," in which child-pornography images were transmitted and arrangements for a sexual encounter were discussed. More specifically, Whited sent Will two images of child pornography and expressed his interest in using child pornography in connection with the sexual encounter they were then planning. Will, in turn, expressed his approval of the images and asked Whited to continue to send him child pornography to "keep me happy" until the proposed encounter could take place.

Whited was charged with two counts of distribution of child pornography under 18 U.S.C. § 2252A(a)(1), one count of receipt of child pornography under 18 U.S.C. § 2252A(a)(2)(A), and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B). He moved to suppress the evidence seized during the search of his home. Whited testified at the suppression hearing that when he came to the door after being summoned by his

son's friend, he stepped out onto the stoop and closed both the main door and the exterior screen door before speaking with Inspector Maxwell.

In contrast, Inspector Maxwell testified that when Whited came to the door, he stood on the threshold between the main door and the screen door, opened the screen door for Inspector Maxwell, and from that position—with the main door still open behind him—accepted and signed for the control package. Inspector Maxwell then turned and began to walk away, but looked back over his shoulder and saw Whited retreat back into the house momentarily before exiting the house, closing both doors behind him, and starting toward his car. Maxwell testified that when Whited signed for the package, he had not closed *either* door but stood on the threshold between them. FBI Special Agent Scott McDonough, observing the operation from about 200 feet away, also testified that the exchange of the package took place when Whited was standing on the threshold between the doors; he testified that he saw Whited briefly go back into the house before leaving with the package.

Michael Hoeft—the friend of Whited's son who had spent the night and answered the door when Inspector Maxwell rang the bell—testified that he had been asleep in the living room when he was awakened by the doorbell ringing. He said he answered the door and a mailman asked for Matthew Whited. Michael went to get Whited, and then observed as Whited talked to the mailman while standing in the doorway with both feet still in the house. He saw Whited sign for and take the package from the

mailman and then leave the house. Ryan Manley, another friend of Whited's son who was at the "sleepover," did not remember much; he testified only that he saw Whited leave through the front door of the house.

The district court denied Whited's suppression motion, holding that the conditions triggering the execution of the warrant had been satisfied. The court credited the testimony of Inspector Maxwell and Special Agent McDonough and found that Whited had been standing on the threshold between the outer screen door and the inside main door of the house when he received the control package, and then had retreated into the house, however briefly, to close the main door behind him before leaving.

Whited pleaded guilty to one count of distribution, one count of possession, and one count of receipt of child pornography, reserving the right to challenge the search. At sentencing the district court determined that Whited had distributed child pornography in expectation of receiving a thing of value, warranting application of the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B). The court found that Whited distributed child pornography to Will in the reasonable expectation that it would lead to the sexual encounter the two were then arranging. This produced an advisory sentencing guidelines range of 296 to 365 months. The judge made specific mention of several § 3553(a) factors, including the defendant's lack of criminal history; his lack of documented aggression against minors; the seriousness of child-pornography crimes; the results of Whited's psychological evaluation, which had diagnosed pedophilia; the need to deter Whited

from escalating from child pornography to child molestation; and the need for general deterrence and protection of the public. The court imposed a sentence of 300 months in prison, at the low end of the guidelines range.

## II. Discussion

Whited raises three issues on appeal. He renews his argument that the search of his home violated the Fourth Amendment because the triggering conditions precedent in the anticipatory warrant did not occur. He also argues that the district court should not have applied the five-level sentencing enhancement under § 2G2.2(b)(3)(B) because his distribution of child pornography to Will was merely gratuitous and not in reasonable expectation of receiving sex. Finally, he argues that the district court failed to properly consider the relevant factors under 18 U.S.C. § 3553(a) and therefore his sentence is unreasonable. None of these arguments has merit.

### A. Denial of Suppression Motion

The district court's denial of Whited's suppression is subject to a dual standard of review; we review legal conclusions de novo and findings of fact for clear error, giving special deference to the district court's superior vantage point on matters of witness credibility. *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir. 1993).

"An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time

(but not presently) certain evidence of crime will be located at a specified place.' " *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quoting 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(c), p. 398 (4th ed. 2004)). Anticipatory warrants generally "subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.' " *Id.* An anticipatory warrant may issue if "the magistrate . . . determine[s] (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *Id.* at 96. The probable-cause inquiry is twofold: there must be a fair probability that contraband or evidence of a crime will be found in the described place if the triggering condition occurs *and* probable cause to believe the triggering condition will occur. *Id.* at 96-97.

The focus here, however, is on the execution of the anticipatory warrant, not its issuance.[1] Whited claims one of the warrant's triggering conditions—his entry into his

---

[1] Whited does not, for example, raise an argument regarding the scope of the warrant under the Fourth Amendment. That is, he does not challenge the particularity of the warrant's description of the place to be searched and things to be seized. *See Grubbs*, 547 U.S. at 97-99 (explaining the Fourth Amendment's "particular description" requirement). Accordingly, this opinion should not be read as suggesting that a controlled delivery of one parcel automatically authorizes a general search of a home. *But see United States v. Watzman*, 486 F.3d 1004, 1008-09 (7th Cir. 2007) (discussing the general sufficiency of information in warrant application to establish probable cause to search for and seize child pornography in a home).

home with the control package—did not occur. This is a challenge to the district court's fact-finding at the suppression hearing, which is subject to deferential review for clear error. Here, the district court weighed the conflicting testimony regarding the circumstances of Whited's receipt of the control package and specifically rejected Whited's claim that he closed both the inside main door and the exterior screen door behind him before he accepted the package from Inspector Maxwell. Inspector Maxwell and Special Agent McDonough, who was observing Whited's interaction with Maxwell from the street, both testified that Whited was on the threshold between the doors when he took delivery of the package. Maxwell also testified that he specifically checked to make sure that Whited entered his house after receiving the package; he said that if Whited had *not* entered the house, he planned to ask Whited for permission to use his bathroom to ensure that he entered the house with the package. Michael Hoeft, the youngster who answered the door and summoned Whited, testified that he saw Whited talking with Maxwell and signing for a package; this would have been impossible if Whited had closed both doors prior to talking with Maxwell. Also, Michael testified that Whited had both feet in the house when he accepted the package.

The district court's findings that Whited received the control package while standing on the threshold between the doors and briefly retreated into the house with it were

not clearly erroneous.[2] The triggering conditions for the anticipatory warrant were satisfied, and Whited's motion to suppress the evidence obtained in the search was properly denied.

## B.  Sentencing Enhancement Under § 2G2.2(b)(3)(B)

Whited argues the district court should not have applied the sentencing enhancement under § 2G2.2(b)(3)(B), which adds five levels to the defendant's base offense level if the distribution of child pornography was "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." He maintains that his transmission of child-pornography images to Will was gratuitous and not in connection with any "precise bargain" for sex, and therefore was not in "expectation of receipt[] of a thing of value." To the extent this argument raises a question about the interpretation of the guideline, our review is de novo; to the extent that it challenges the district court's factual findings, our review is for clear error. *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006).

We have not yet had occasion to consider the meaning of the "expectation of receipt" alternative in § 2G2.2(b)(3)(B). The application notes broadly explain that this enhance-

---

[2] The threshold is part of the home, although it may be considered exposed to the public and therefore not carrying an expectation of privacy for Fourth Amendment purposes, depending on the circumstances. *See United States v. Santana*, 427 U.S. 38, 42 (1976).

ment applies to "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." U.S.S.G. § 2G2.2 cmt. n.1. A "thing of value" is specifically defined in the application notes as "anything of valuable consideration." *Id.* Whited concedes that the sexual encounter he and Will were contemplating would qualify as a "thing of value."

The district court relied on a decision from the Second Circuit interpreting the word "expectation" in § 2G2.2(b)(3)(B) according to its dictionary definition: "the act or action of looking forward: anticipation." *United States v. Maneri*, 353 F.3d 165, 169 (2d Cir. 2003) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 799 (1976)). The court in *Maneri* rejected the defendant's argument that "expectation of receipt" in § 2G2.2(b)(3)(B) required a "specific agreement." *Id.* Instead, the court held that if the defendant distributed child pornography "in anticipation of, or while reasonably believing in the possibility of, the receipt of a thing of value," the enhancement applied. *Id.* The defendant in *Maneri* had sent child-pornography images to a sheriff's deputy posing on the Internet as an adolescent girl with the screen name "nygrl12," and had engaged in detailed chat-room discussions with "nygrl12" about a time and place to meet for sex. The court upheld the application of the enhancement.

We agree with the Second Circuit that "expectation of receipt" under § 2G2.2(b)(3)(B) does not require an explicit agreement or precise bargain, as Whited contends. Distribution of child pornography in the reasonable

anticipation or reasonable belief of receiving a thing of value is enough for the enhancement to apply. The district court did not clearly err in finding that Whited distributed child pornography in reasonable anticipation of obtaining sex from Will. Here, as in *Maneri,* Whited and his Internet correspondent engaged in detailed online discussions to arrange their sexual encounter. Whited, like Maneri, sent his correspondent images of child pornography to facilitate that transaction. In this case Will went so far as to request that Whited send more child pornography to "keep me happy" until the encounter could take place. The enhancement was properly applied.

## C.  District Court's Application of § 3553(a) Factors

Finally, Whited contends that his 300-month sentence is unreasonable because the district court did not give adequate consideration to the § 3553(a) factors that favored a below-guidelines variance. A sentence within a properly calculated guidelines range enjoys a rebuttable presumption of reasonableness. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007).

Here, the district court calculated the appropriate guidelines range and then gave consideration to Whited's lack of criminal record and the absence of any documented history of aggression against children. On the other side of the ledger, however, the court considered the seriousness of child-pornography distribution; Whited's psycho-

logical evaluation, diagnosis of pedophilia, and pattern of placing of himself in a position of power over children; and the need for protection of the public and specific and general deterrence. On appeal Whited does little more than question the weight the court assigned to these factors; this is insufficient to rebut the presumption of reasonableness. The district court more than satisfied its obligations under § 3553(a).

AFFIRMED.