RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0052p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHARLES OLIVER,

*Defendant-Appellant*.

No. 18-5465

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cr-20266-1—Sheryl H. Lipman, District Judge.

Argued: January 15, 2019

Decided and Filed: March 26, 2019

Before: COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Unam Peter Oh, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Kasey A. Weiland, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Unam Peter Oh, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Kasey A. Weiland, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Charles Oliver appeals

his sentence of 210 months of imprisonment for distribution of child pornography. Oliver asserts

that the district court erred when it applied a five-level enhancement under USSG § 2G2.2(b)(3)(B) (2016) for distributing child pornography in exchange for valuable consideration. Because we articulate, for the first time, the essential elements for applying the enhancement under the 2016 version of § 2G2.2(b)(3)(B), and because the district court did not fully consider these elements when applying the enhancement, we **VACATE** Oliver's sentence and **REMAND** for resentencing consistent with this opinion.

## I. BACKGROUND[1]

In April 2017, an informant contacted the Federal Bureau of Investigation ("FBI") and explained that, during an internet chat, Oliver had requested contact information for someone who could facilitate a meeting between Oliver and a minor for the purposes of engaging in sexual activity. R. 28 (PSR ¶5) (Page ID #56). An FBI agent instructed the informant to provide Oliver with an email and Kik account[2] through which Oliver could contact the agent. *Id.* On April 7, 2017, Oliver sent the agent an email message containing an image of child pornography. *Id.* (PSR ¶ 6) (Page ID #56). The message did not contain any additional content or statement by Oliver. *See* R. 30 (Gov't Sent'g Mem. at 3) (Page ID #86). Between April 9, 2017 and July 26, 2017, Oliver and the agent exchanged various text messages focusing on Oliver's interest in having sexual intercourse with the agent's purported minor daughter. *See* R. 28 (PSR ¶¶ 6, 8–9) (Page ID #56–57). Oliver also sent the agent additional sexually explicit images and videos of prepubescent minors. *Id.* In these text exchanges, Oliver explained in explicit detail what sexual activities he planned to perform on the agent's daughter when they met in person. R. 30 (Gov't Sent'g Mem. at 7–9, 12–13) (Page ID #90–92, 95–96). In one exchange, Oliver sent a picture of his penis to the agent and asked to see a "pic or vid" of the agent's daughter. *Id.* at 8–9 (Page ID #91–92). When the agent stated that he had to "be careful" and that he was not sure whether Oliver was "real and not a wanker or cops," Oliver responded

---

[1]The following information is contained in the presentence investigation report ("PSR") and the government's sentencing memorandum. Oliver did not object to the factual allegations contained in either document, and the text exchanges referenced below were entered into the record as exhibits at sentencing. *See* R. 33 (Def. Sentencing Mem. at 1) (Page ID #182); R. 43 (Sent'g Hr'g Tr. at 32–37) (Page ID #282–87); R. 38 (Exhibit List); R. 38-1 (Exhibit List).

[2]Kik is a messaging application. R. 28 (PSR ¶ 6) (Page ID #56).

by sending a picture of child pornography and stated, "I'm real and not a cop. A cop wouldn't be sending this." *Id.* at 9 (Page ID #92).

On September 13, 2017, Oliver was indicted on two counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). R. 1 (Indictment at 1–2) (Page ID #1–2). Oliver pleaded guilty to both counts on November 30, 2017. R. 22 (Order on Change of Plea) (Page ID #29). In the PSR prepared for sentencing, Oliver's base offense level was set at 22 pursuant to USSG § 2G2.2(a)(2). R. 28 (PSR ¶ 22) (Page ID #59). The PSR also applied a five-level enhancement under § 2G2.2(b)(3)(B), which applies when a defendant distributes child pornography "in exchange for any valuable consideration, but not for pecuniary gain." *Id.* (PSR ¶ 24) (Page ID #59); *see also* USSG § 2G2.2(b)(3)(B) (2016). The PSR explained that "[t]he defendant distributed images of child pornography in an attempt to gain access to a minor child to engage in sexual intercourse." R. 28 (PSR ¶ 24) (Page ID #59).

Although Oliver did not object to the facts set forth in the PSR, Oliver did file an objection to the five-level enhancement. R. 33 (Def. Sent'g Mem. at 1–2) (Page ID #182–83). Oliver asserted that pursuant to the guidelines, which had been amended in 2016, the enhancement did not apply to him because he had never "agreed" to distribute child pornography "in exchange" for any valuable consideration. *Id.* While Oliver noted that the PSR had explained that Oliver had distributed child pornography and had expressed a desire to meet the agent's purported daughter in person for sexual intercourse, Oliver contended that "the PSR cannot demonstrate that these two lines of conduct and inquiry ever converged." *Id.* at 3 (Page ID #184).

At sentencing on April 24, 2018, Oliver's counsel reiterated the same argument and also explained that even if § 2G2.2(b)(3)(B) encompassed implicit, rather than explicit, agreements, the facts did not support a finding that there was an implicit agreement for distribution. R. 43 (Sent'g Hr'g Tr. at 11) (Page ID #261). The district court agreed that "without a doubt, Mr. Oliver never said explicitly, I'm going to send you this and I expect that in return." *Id.* at 24 (Page ID #274). Nonetheless, the court concluded that the guideline did not require an explicit agreement and that, because the evidence showed there was an "implicit agreement," the enhancement applied. *Id.* at 24–25 (Page ID #274–75). The district court primarily relied upon

the specific text message exchange detailed above and noted that the evidence showed "Mr. Oliver's specific purpose at the time; one, to eventually set up this meeting with the child, but even in addition to that, the way the record reads to me, he is also seeking pictures of the child." *Id.* at 25 (Page ID #275).

Having determined that the enhancement applied, the district court calculated Oliver's total offense level at 37 and his criminal history category as I, leading to a guideline range of 210 to 262 months. *Id.* at 27–28 (Page ID #277–78). Following arguments from counsel, Oliver's allocution, and the district court's consideration of the 18 U.S.C. § 3553(a) factors, the court sentenced Oliver to 210 months in prison and five years of supervised release. *Id.* at 81–82 (Page ID #331–32); *see also* R. 36 (Sealed J. at 2–3) (Page ID #225–26). This timely appeal followed. *See* R. 40 (Notice of Appeal); Fed. R. App. P. 4(b).

## II. STANDARD OF REVIEW

We review a district court's "legal conclusions regarding application of the [g]uidelines de novo" and any findings of fact for clear error. *United States v. Holcomb*, 625 F.3d 287, 291 (6th Cir. 2010). Thus, we will review de novo the district court's conclusion as to the legal requirements of § 2G2.2(b)(3)(B) and will then apply the clear-error standard to the district court's determination that Oliver entered into an implicit agreement with the agent.

## III. DISCUSSION

The sole issue on appeal is whether the district court erred in applying the five-level enhancement under § 2G2.2(b)(3)(B). *See* Appellant Brief at 18. A sentencing court commits procedural error if, among other things, the district court fails to calculate properly the advisory guideline range, including the application of particular enhancements. *United States v. Mabee*, 765 F.3d 666, 674 (6th Cir. 2014). Resolution of this issue in Oliver's case largely depends on three considerations: (1) the necessary elements for applying the enhancement; (2) whether the district court properly applied the necessary elements under § 2G2.2(b)(3)(B); and, if the district court did properly apply those elements, (3) whether there was sufficient evidence for the district court to conclude that Oliver "exchanged" child pornography pursuant to an "agreement" with

the agent. For the reasons set forth below, we need only reach the first two questions to resolve this case.

**A. 2016 Guideline Amendments**

To understand fully the scope of this enhancement, we first examine the evolution of the enhancement leading up to the 2016 amendment. Prior to November 1, 2016, individuals convicted of violating 18 U.S.C. § 2252(a)(2) for distributing child pornography were subject to various enhancements based on the type of distribution. *See* § 2G2.2(b)(3)(A–E) (providing enhancements if the individual distributed child pornography to a minor, for pecuniary gain, or to persuade a minor to have sexual intercourse). Under the pre-2016 version of § 2G2.2(b)(3)(B), a defendant faced a five-level enhancement if the offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The Application Note further explained that "'[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain' means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." § 2G2.2 cmt. n.1. A "thing of value" was defined as "anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." *Id.*

Following the amendment in 2016, defendants are subjected to the same enhancement if they distribute child pornography "in exchange for any valuable consideration but not for pecuniary gain." § 2G2.2(b)(3)(B). The Application Note to the 2016 guideline explains that "'distribut[ion] in exchange for any valuable consideration' means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child." *Id.* cmt. n.1.

As the government correctly notes, the amendment was primarily focused on resolving a circuit split concerning the intent requirement under § 2G2.2(b)(3)(B) as it applied "frequently,

although not exclusively, [to] cases involving the use of peer-to-peer file-sharing programs or networks." *See* 2016 Amendments to the Sent'g Guidelines at 10. Peer-to-peer programs are "file-sharing application[s which] allow[ ] two or more users to essentially have access [to] each other's computers and to directly swap files from their computers." *Id.* at 11. Some peer-to-peer programs automatically designate a user's files as "public" (i.e., available for download by any other user of the program), whereas others permit a user to keep their own files private while still using the peer-to-peer software to download material. *Id.*

As the Sentencing Commission explained, Circuit courts were split on the mental state required for the enhancement in the context of peer-to-peer programs. *Compare United States v. Groce*, 784 F.3d 291, 294–95 (5th Cir. 2015) (noting that "[g]enerally, when a defendant knowingly uses peer-to-peer file sharing software, . . . he engages in the kind of distribution contemplated by § 2G2.2(b)(3)(B)" and concluding that, by knowingly using the program to distribute and download child pornography and being familiar with the program, the defendant necessarily "expected" that distribution would lead to receipt of additional child pornographic materials), *and United States v. Bastian*, 603 F.3d 460, 466 (8th Cir. 2010) (concluding that the government could prove the applicability of the enhancement either "with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him" or "with indirect evidence, such as the defendant's technical sophistication in computers"), *with United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013) (rejecting the per se rule and determining the government must prove that "the defendant: 1) knowingly made child pornography in his possession available to others by some means, and 2) made his pornographic materials available for the specific purpose of obtaining something of valuable consideration, such as more pornography, whether or not he actually succeeded in obtaining the desired thing of value"). The Sentencing Commission considered the amendment "an appropriate way to account for the higher level of culpability when the defendant had the specific purpose of distributing child pornographic material to another person in exchange for valuable consideration." 2016 Amendments at 12. Having examined the reasoning behind the amendment, we now turn to the necessary elements for applying the enhancement to Oliver's case.

**B.  Necessary Elements Under USSG § 2G2.2(b)(3)(B)**

In attempting to formulate the necessary elements of the enhancement, the government contends that the amendment does not impact the applicability of the enhancement to Oliver's conduct because (1) the purpose of the amendment was focused primarily on peer-to-peer programs, which are not implicated in Oliver's case, and (2) courts have found the enhancement applicable in cases similar to Oliver's despite the absence of an explicit agreement.  Appellee Brief at 16–21.  In response, Oliver concedes that either explicit *or* implicit agreements may trigger the application of the enhancement.  Reply Brief at 8.  Oliver asserts, however, that in finding that an implicit agreement existed in his case, the district court improperly focused on Oliver's purpose in distributing the child pornography.  *Id.* at 10–14.

As explained below, because the amendment supersedes the cases relied upon by the government and because the plain language of the enhancement and application Note necessitates an implicit or explicit agreement and understanding between two parties, we conclude that, in order for the enhancement to apply, the government must show that the defendant:  (1) agreed—either explicitly or implicitly—to an exchange with another person and then (2) knowingly distributed child pornography to that person (3) for the specific purpose of obtaining something of valuable consideration (4) from that same person.

**1.  Pre-Amendment Cases**

The government asserts that, in applying §2G2.2(b)(3)(B), courts have never required an explicit agreement between a defendant and a third party, whereby the defendant distributes child pornography only on the condition that he receive something of value in exchange from that third party.  Appellee Brief at 16–21.  As Oliver points out, however, those decisions relied upon the now-removed "expectation of receipt" language from the pre-2016 enhancement.

For instance, in *United States v. Maneri*, an undercover agent posed as an underaged girl and discussed meeting with the defendant to engage in sexual activity.  353 F.3d 165, 167 (2d Cir. 2003).  During the course of that discussion, the defendant distributed child pornography to the agent.  *Id.*  Even though the defendant and the agent did not enter into any "specific agreement or understanding" regarding the pornography, the Second Circuit nonetheless

concluded that the enhancement applied because "the provision is implicated if the distributor *expects*—rather than just hopes—to receive a thing of value, including the opportunity for a sexual encounter, in return for distributing child pornography." *Id.* at 168 (emphasis added). The court noted that "the key word in this case is 'expectation'" which had been defined as "the act or action of looking forward: anticipation." *Id.* at 169 (quoting *Webster's Third New International Dictionary* 799 (1976)); *see also id.* (rejecting the defendant's argument that "a specific argument or understanding" had to be shown and noting that "a 'transaction' does not necessarily include a specific *agreement*. Instead, . . . it includes a communicative activity . . . involving two parties . . . reciprocally affecting or influencing each other" (emphasis added) (internal citation omitted)).[3]

Similarly, in *United States v. Whited*, the Seventh Circuit endorsed the *Maneri* court's reasoning when it determined that "expectation of receipt" under the former enhancement "does not require an explicit agreement or precise bargain [because d]istribution of child pornography in the reasonable *anticipation* or reasonable *belief* of receiving a thing of value is enough." 539 F.3d 693, 699 (7th Cir. 2008) (emphasis added). The former enhancement was thus clearly applicable to the defendant, as the defendant had corresponded with an individual to set up a meeting where they would view child pornography together and had sent additional pornography to the individual after the individual "expressed his approval of the images and asked [the defendant] to continue to send him child pornography to 'keep me [the individual] happy.'" *Id.* at 696; *see also United States v. Emmons*, 524 F. App'x 995, 998–99 (6th Cir.) (per curiam), *cert. denied*, 134 S. Ct. 297 (2013) (concluding that the defendant had distributed child pornography "with the expectation of receiving child pornography in return" when he discussed his preferences with the agent, told the agent that the defendant's materials were available, and requested that the agent "put some stuff up soon").

Finally, in *United States v. Geiner*, the Tenth Circuit agreed that although the former application Note used terms based in contract law, because the enhancement applied if the

---

[3]The Application Note to the 2016 amendment not only replaced the word "transaction" with the phrase "*agreed* to an exchange," but as the Second Circuit noted, the word "agreement" has a more limited meaning than the definition of "transaction" cited in *Maneri*. *See Agreement*, Oxford English Dictionary (3d ed. 2018) (defining "agreement" as "[a]n arrangement . . . made between two or more parties and agreed by mutual consent").

defendant merely "expected" to receive something, the expectation did not "need [to] arise from an underlying agreement to exchange child pornography . . . ." 498 F.3d 1104, 1108–09 (10th Cir. 2007) ("The enhancement applies if he engaged in *any* transaction with the expectation that he would receive a thing of value."). Consequently, the defendant's decision to distribute child pornography "*in anticipation of* a faster downloading speed" came within the enhancement. *Id.* at 1110.

Admittedly, these cases are a relatively close factual match to Oliver's, as they all involve defendants distributing child pornography in an attempt to secure something of value. Because these cases uniformly rely upon the now-removed "expectation of receipt" language, however, the government's reliance on them is misplaced. Therefore, absent controlling authority on the amended enhancement, we now turn to the plain language of the guideline.

### 2. Plain Language of USSG § 2G2.2(b)(3)(B)

When interpreting the sentencing guidelines, we are mindful that "[t]he Guidelines should be interpreted as if they were a statute," meaning that we must "follow the clear, unambiguous language if there is no manifestation of a contrary intent." *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1272 (6th Cir. 1995) (internal quotation marks omitted) (quoting *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990). Thus, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). Finally, "a court should give effect to all words and phrases in the text at issue." *Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 895 (6th Cir. 2016).

After the 2016 amendment, a defendant is subject to the five-level enhancement under § 2G2.2(b)(3)(B) if he "distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain." The Application Note further explains:

> "The defendant distributed in exchange for any valuable consideration" means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child

pornographic material, preferential access to child pornographic material, or access to a child.

§ 2G2.2 cmt. n.1. The government asserts that because Oliver sent child pornography to the undercover agent for the "specific purpose" of gaining access to the child or to receive pictures or videos of the child, Oliver is highly culpable, and, therefore, the enhancement must apply to him. *See* Appellee Brief at 17–18 (arguing that the Commission intended for the enhancement to apply to individuals who illustrated a "higher level of culpability"). By focusing on Oliver's "specific purpose" and culpability, however, the government ignores the other, unambiguous requirements of the enhancement.

The enhancement requires that "the defendant distributed *in exchange for* any valuable consideration." § 2G2.2(b)(3)(B) (emphasis added). Unlike the previous "expectation of receipt" language, which imposes a forward-looking requirement and includes a unilateral understanding by the defendant that, were he to distribute the child pornography, he would reasonably anticipate receiving something of value in return, the new enhancement uses the phrase "in exchange for." An "exchange" is more exacting than a mere "expectation of receipt" and, at the very least, requires an agreement or mutual understanding between two parties, rather than the defendant's personal belief or expectation. *See Exchange*, Oxford English Dictionary (3d ed. 2018) (defining the noun as "[t]he action, or an act, of *reciprocal giving* and receiving" and the verb as "to give, relinquish, or lose (something) whilst receiving something else *in return*" (emphasis added)).

Similarly, the 2016 Application Note explains that *in addition* to showing that the defendant distributed the child pornography with the "specific purpose" of obtaining something of value, the defendant must also "*agree*[ ] *to an exchange with* another person under which the defendant knowingly distributed" child pornography. § 2G2.2 cmt. n.1 (emphasis added). Thus, in order for the enhancement to apply, the defendant must have (1) formed an agreement with another person to an exchange (2) "under which the defendant knowingly distributed" child pornography "to that other person" (3) "for the specific purpose of obtaining something of valuable consideration" in return. *Id.* The defendant's unilateral belief or expectation that he will receive something of value in exchange for his distribution is insufficient; rather, the

distribution must be part of, or in support of, the defendant's obligations under the agreement with another person.

Moreover, the Application Note explains that the agreement must be "with another person" and that the valuable consideration comes "from that other person." Such a requirement necessarily includes some kind of discussion or understanding between the defendant and the "other person" regarding the contours—whether implicit or explicit—of the agreement. Without any statement or action from the "other person" from which the defendant could reasonably extrapolate—even incorrectly—that the defendant's distribution was part of the agreement, the defendant has not "agreed to an exchange" with that "other person." *See United States v. Milligan*, 17 F.3d 177, 182–83 (6th Cir.), *cert. denied*, 115 S. Ct. 211 (1994) (noting that, in order to show the existence of a conspiracy, "acts done with a *common purpose* can establish an implicit agreement" and that a "conspiracy may be inferred from relevant and competent circumstantial evidence, such as the acts of the *conspirators* themselves" (emphasis added)); *see also United States v. Walls*, 293 F.3d 959, 967 (6th Cir.), *cert. denied*, 123 S. Ct. 543 (2002) ("A conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a common plan.").

This interpretation is not undermined by the fact that the 2016 amendment was primarily focused on the intent requirement for defendants using peer-to-peer programs. First, as the Sentencing Commission noted, the Circuit split at issue did not arise "exclusively" in the peer-to-peer context. *See* 2016 Amendments to the Sent'g Guidelines at 10. Second, to the extent that courts have previously applied the enhancement to factual scenarios outside the peer-to-peer context, as noted above, those cases uniformly relied upon the "expectation of receipt" language in the pre-2016 enhancement. With that phrase removed, we are required to look at the enhancement anew. As written, the enhancement makes no distinction between defendants who use peer-to-peer programs and defendants who directly engage with agents or other individuals. Instead, if either defendant "distribute[s] in exchange" for something of value, the five-level enhancement applies, even if one defendant's distribution illustrates a "higher culpability" than the other defendant's distribution.

Finally, although there are very few cases interpreting the amended enhancement, they largely support the more exacting interpretation of § 2G2.2(b)(3)(B) discussed above. In *United States v. Taylor*, the District Court for the Eastern District of Tennessee interpreted the amendment to require an "agreement" between the defendant and a third party and concluded that by entering a chatroom labeled "young Taboo trade" and then distributing child pornography in response to another user's request to trade, the enhancement should apply. No. 2:18-CR-7, 2018 WL 3945937, at *6 (E.D. Tenn. Aug. 16, 2018). Similarly, in *Cameron v. United States*, the District Court for the District of Maine determined that the enhancement applied when the defendant informed another user that the new application was "better for trading pictures," expressed approval of the materials he [the defendant] received, and then posted his own materials to the application. No. 1:17-cv-00275-JAW, 2018 WL 5801535, at *6–8 (D. Me. Nov. 6, 2018).[4]

Oliver also points us to the recent Fifth Circuit opinion in *United States v. Halverson*, 897 F.3d 645 (5th Cir. 2018). In *Halverson*, the Fifth Circuit noted that the 2016 amendment superseded its previous per se rule and held that "[t]he new test for applying the enhancement . . . requires a court to find: (1) the defendant agreed to an exchange with another person, (2) the defendant knowingly distributed child pornography to that person (3) for the purpose of obtaining something of valuable consideration, and (4) the valuable consideration came from that person." 897 F.3d at 652. In applying the new rule, the court noted that the defendant had "agreed" to an exchange with another person when the defendant distributed child pornography through a peer-to-peer program in order to receive "preferential access to more child pornography" and then distributed child pornography to an undercover agent. *Id.* at 649, 652. Because the agent testified "that Halverson had not sought anything from him [the agent] in exchange for sharing files," however, the Fifth Circuit concluded that the government had not illustrated "that Halverson distributed any child pornography to receive 'something of valuable

---

[4]Although the Eighth Circuit has likewise noted that its previous rulings regarding the peer-to-peer programs have been superseded by statute, it did not reach the issue of what the new enhancement required. *See United States v. Hansen*, 859 F.3d 576, 578 (8th Cir. 2017) (concluding the court did not have to decide the issue because even if the district court erroneously applied the enhancement, the enhancement did not affect the sentence).

consideration from that [ ] person' with whom he traded." *Id.* (alteration in original) (quoting § 2G2.2 cmt. n.1).

We agree with the Fifth Circuit that the amended enhancement requires proof that the defendant "agreed to an exchange with another person." The fourth requirement that "the valuable consideration came from" the person with whom the defendant agreed to exchange, however, gives us pause. On the one hand, the plain language of the Application Note supports a requirement that the "valuable consideration" the defendant expects to receive come from the "other person" with whom the defendant has made the agreement to exchange. *See* § 2G2.2 cmt. n.1 (requiring that the defendant distribute "for the specific purpose of obtaining something of valuable consideration *from that other person*" (emphasis added)). Put differently, if the defendant's distribution is to a party other than the party from whom he expects to receive "valuable consideration," the distribution is not part of an agreement "to exchange" as articulated by the enhancement.[5]

To the extent that *Halverson*'s fourth element requires proof that the defendant actually *receive* the thing of value, however, we cannot accept this requirement. Not only does the plain language of the enhancement and application Note fail to support such an element, but a requirement that the defendant actually receive the thing of value (be it additional child pornography or access to the child) would undoubtedly lead to the very action the enhancement strives to prevent: further distribution of child pornography and the continued victimization of children. This would be a particularly perverse requirement when the "other person" forming the agreement with the defendant is an undercover agent who is unable to comply with the defendant's request. Thus, to the extent that the rule articulated in *Halverson* may be interpreted to require that the defendant actually receive the valuable consideration, we reject this enhanced and unsupported element.

Consequently, and for the reasons set forth above, we conclude that in order to apply the five-level enhancement under amended § 2G2.2(b)(3)(B), the government must show that the

---

[5]This interpretation is consistent with the other cases interpreting the enhancement, as both *Cameron* and *Taylor* involved defendants who distributed to a third party after discussing the possibility of trading with that third party. *See Cameron*, 2018 WL 5801535, at *6–8; *Taylor*, 2018 WL 3945937, at *6.

defendant: (1) agreed—either explicitly or implicitly—to an exchange with another person under which (2) the defendant knowingly distributed child pornography to that other person (3) for the specific purpose of obtaining something of valuable consideration (4) from that same other person. The distribution must be part of that explicit or implicit agreement, i.e., the defendant understands or believes—even if incorrectly—that his distribution is in pursuance of his obligation under the agreement. Additionally, the defendant's distribution must be for the "specific purpose" of receiving the valuable consideration. And finally, although the distribution must be to the "other person" with whom the defendant has "agreed to an exchange," the defendant need not have received the valuable consideration in order for the enhancement to apply. Having established the necessary elements for imposing the new enhancement, we now consider whether the district court properly applied these elements in Oliver's case.

## C. Enhancement as Applied to Oliver

In its ruling, the district court primarily relied upon a text exchange between Oliver and the agent. Oliver sent a picture of his own penis and asked "Do you mind if I see[ ] her." R. 30 (Gov't Sent'g Mem. at 8) (Page ID #91); *see also* R. 43 (Sent'g Hr'g Tr. at 25–27) (Page ID #275–77). When the agent asked "What u mean?" Oliver responded that the picture of his penis was "what I have for her" and again asked for "[a] pic or vid of her." R. 30 (Gov't Sent'g Mem. at 8–9) (Page ID #91–92). The agent then stated "I gotta be careful still not sure bout u if your real and not a wanker or cops." *Id.* at 9 (Page ID #91). In response, Oliver sent an image of child pornography and stated: "I'm real and not a cop. A cop wouldn't be sending this." *Id.*

In examining the applicability of the enhancement, the district court correctly concluded that although this exchange did not evidence any *explicit* agreement, the enhancement could nonetheless apply if there were evidence of an implicit agreement to exchange for valuable consideration. R. 43 (Sent'g Hr'g Tr. at 24) (Page ID #274) ("[W]ithout a doubt, Mr. Oliver never said explicitly, I'm going to send you this and I expect that in return, but the way I read the guidelines and the application note in the case law, that's not required."). Based on the evidence before it, the district court concluded "that an implicit agreement can certainly be found from the evidence in the record." *Id.* Because there was sufficient evidence supporting this factual finding, the government contends that we must affirm the district court's application of the

enhancement.  This argument ignores, however, the plain requirements of § 2G2.2(b)(3)(B) and, albeit understandably, the particular elements we have just enumerated above.  Specifically, although the district court concluded that there was an implicit agreement, it is less than clear to us that the district court applied the correct legal factors to make that determination.  *See Holcomb*, 625 F.3d at 291 (considering de novo whether the district court correctly applied the law when calculating the defendant's guideline sentence).  Rather, in determining that an implicit agreement existed, the district court appeared to examine only Oliver's specific purpose.  *See, e.g.*, *id.* at 25 (Page ID #275) (concluding that the exchanges described in the government's sentencing memorandum "are evidence of Mr. Oliver's *specific purpose* at the time; one, to eventually set up this meeting with the child, but even in addition to that, the way the record reads to me, he is also seeking pictures of the child" (emphasis added)); *id.* at 27 (Page ID #277) (determining that the text exchange detailed above was "not the only exchange in here that appears to me to be one for a *specific purpose*" (emphasis added)).

Certainly, the defendant's specific purpose is an important factor to consider when determining whether there was an implicit agreement and, specifically, whether the defendant's distribution of child pornography was in support of that agreement.  Indeed, because an implicit agreement is, necessarily, inferred from the parties' actions or comments, the defendant's intention is a significant indicator that he understood that an agreement was in place.  However, the defendant's purpose cannot be the *only* factor a court considers.  As noted above, the amended enhancement requires that the defendant's distribution be for the "specific purpose" of receiving something of valuable consideration *and* that the defendant "agreed to an exchange with another person."  § 2G2.2 cmt. n.1.  If a defendant's specific purpose could definitely and exclusively show an implicit agreement, there would be very little reason to require both elements.  *See In re City of Detroit*, 841 F.3d 684, 696–97 (6th Cir. 2016) ("[N]o clause, sentence, or word of a statute should be read as superfluous, void, or insignificant." (internal quotation marks and citations omitted)).  Moreover, by requiring that the distribution be "under" an implicit agreement to exchange with "another person," the defendant's unilateral purpose or belief cannot, by itself, control.  Rather, to conclude that there is an "implicit agreement," a court must examine the purpose (or reasonably inferred purpose) of *both* parties, including the context of their discussions and circumstantial evidence such as their actions or comments.  *See Milligan*,

17 F.3d at 182–83 (noting that, in order to show the existence of a conspiracy, "acts done with a *common purpose* can establish an implicit agreement" and that a "conspiracy may be inferred from relevant and competent circumstantial evidence, such as the acts of the *conspirators* themselves" (emphasis added)); *see also Walls*, 293 F.3d at 967 ("A conspiracy may be inferred from circumstantial evidence which may reasonably be interpreted as participation in a *common* plan." (emphasis added)).  Because the district court did not examine this additional evidence when concluding that Oliver distributed child pornography pursuant to an implicit agreement, we vacate Oliver's sentence and remand for re-sentencing so that the district court may more thoroughly consider the evidence in light of our analysis.  At resentencing, each party shall be permitted to submit and identify additional evidence to assist the district court in determining whether § 2G2.2(b)(3)(B) applies to Oliver's conduct.

## IV.  CONCLUSION

For the reasons set forth above, we **VACATE** Oliver's sentence and **REMAND** for resentencing consistent with this opinion.